WHITE *vs.* FISK AND OTHERS.

| 22 | 31 |
| 63 | 137 |
| 22 | 31 |
| 71 | 470 |

A testator, after bequeathing sundry legacies, made his will as follows:

"To the intent that the above gifts and other provisions of this will may be fulfilled, I bequeath all my property, both real and personal, to my friends A and B, esquires, in trust, that by sale or otherwise they may pay the aforesaid bequests, and in further trust, that the residue of my estate they may keep and manage in a prudent manner, or sell and invest, if necessary or prudent, and pay over the annual income of such property as follows:

To my two daughters, C and D, for their sole and separate use, whether sole or married, each an equal sum, such as may be needed to maintain them comfortably in health, not exceeding two hundred and fifty dollars annually to each; and in case of sickness, such further annual sum as may be necessary to defray the costs and charges of such sickness.

To my two sons, E and F, I give the rest and residue of the said annual income of my property, not exceeding two hundred and fifty dollars annually to each, for their respective lives.

In case of the death of either of my said daughters, the annual payment to her shall be paid to her surviving sister, for her sole and separate use, not exceeding three hundred and fifty dollars per annum, unless sickness requires it. In case of the death of either of my said sons, the annual payment to him shall be paid to the surviving son.

White *v.* Fisk and others.

In case but one of said children shall survive, the amount paid such surviving child shall be the whole income annually received, provided it does not exceed six hundred dollars per annum, unless sickness requires it, during the life of such surviving child.

Any *surplus* income that may remain, to the extent of one thousand dollars per annum, I direct·to be expended by my said trustees for the support of indigent pious young men preparing for the ministry in New Haven, Connecticut.

If the *net* annual income of my estate, as above settled, should at any time exceed one thousand dollars, then the *surplus* income I direct to be paid, in·equal portions, to the children of my present wife and their heirs. Before any of the payments herein named are to be made, my said trustees are·first to be paid all expenses, and such reasonable sum for their care and trouble, as the judge of probate for New Haven district may from time to time order and allow.

I appoint A my executor of this my last will and testament."

It was held, that the trust created by such will, is not perpetual, but expires upon the death of the survivor of the testator's children.

Held also, after the death of E and C, (a son and daughter of the testator,) that from the annual income of the estate of the testator, the sum of three hundred and fifty dollars is payable annually to D, (the surviving daughter,) during her life, for her sole and separate use; and in case of sickness, such further annual sum as may be necessary to defray the charges of such sickness. Subject to this payment, the sum of five hundred dollars is payable annually to F, during his life; and in case of the death either of the said D or the said F, then to the survivor of them, during his or her life, the sum of six hundred dollars annually, and such additional sum as the sickness of such survivor shall require. If said income shall be more than sufficient to make the aforesaid payments, then the difference between what may be necessary to make such payment and the sum of one thousand dollars in any one year, is to be paid to the heirs at law of the testator. If the annual income has exceeded, or shall exceed one thousand dollars in any one year, such excess of income, beyond one thousand dollars, is to be paid, in equal proportions, to the children of the surviving widow of the testator and their heirs annually, so long as the said D or F shall live. But upon the death of both the said D and F, said trusts are to cease, and the estate of the testator then remaining, to be distributed to his heirs at law.

A bequest in the following words, " Any surplus income that may remain, to the extent of one thousand dollars per annum, I direct to be expended, by my trustees, for the support of indigent pious young men preparing for the ministry in New Haven, Connecticut," is void for uncertainty.

The principle of *cy pres* has never been incorporated into the equitable jurisprudence of Connecticut.

THIS was a bill in chancery, brought to the superior court for New Haven county, by Henry White, as executor and trustee under the last will and testament of Samuel J. Hitchcock, deceased, asking for the aid and direction of the court in carrying into execution certain trusts created by said will, in relation to which the language of the will was ambiguous and doubtful in its meaning ; and further praying, that the legatees and heirs at law of the testator might be compelled to interplead and adjust among themselves, their claims to certain portions of the testator's estate and the income thereof.

The facts in the case were substantially these. On the 31st of December, 1840, the testator made his last will and testament as follows :

"I, Samuel J. Hitchcock, of New Haven, do make my last will and testament in manner following :—I order my just debts and funeral expenses to be paid.

I give to Henry White, Esq., six hundred dollars, in trust, to be paid to the use of the Domestic Missionary Society of Connecticut, or to be expended for the objects which said society, by the terms of its association, was organized to pursue.

I give to my wife, Narcissa P. Hitchcock, all the property, or the amount thereof, which I have received from her estate. I do this in pursuance of my marriage contract with her, dated December 24, A. D. 1834, and in order to fulfill the same.

To the intent that the above gifts and the other provisions of this will may be fulfilled, I bequeath all my property, both real and personal, to my friends Roger S. Baldwin and Henry White, Esquires, in trust, that by sale or otherwise, they may pay the aforesaid bequests, and in further trust, that the residue of my estate they may keep and manage in a prudent manner, or sell and invest, if necessary or prudent, and pay over the annual income of such property as follows:

To my two daughters, Laura and Mary, for their sole and separate use, whether sole or married, each an equal sum, such as may be needed to maintain them comfortably in health, not exceeding two hundred and fifty dollars annually to each, and in case of sickness, such further annual sum as may be necessary to defray the cost and charges of such sickness.

To my two sons, George and Charles, I give the rest and residue of the said annual income of my property, not exceeding two hundred and fifty dollars annually to each, for their respective lives.

In case of the death of either of my daughters, the annual payment to her shall be paid to her surviving sister, for her sole and separate use, not exceeding three hundred and fifty dollars per annum, unless sickness requires it.

In case of the death of either of my said sons, the annual payment to him shall be paid to the surviving son.

In case but one of said children shall survive, the amount paid such surviving child, shall be the whole income annually received, provided it does not exceed six hundred dollars per annum, unless sickness requires it, during the life of such surviving child.

Any surplus income that may remain, to the extent of one thousand dollars per annum, I direct to be expended, by my said trustees, for the support of indigent pious young men, preparing for the ministry, in New Haven, Conn.

If the net annual income of my estate, as above settled, should at any time exceed one thousand dollars, then the surplus income I direct to be paid, in equal portions, to the children of my present wife, and their heirs.

Before any of the payments herein named are to be made, my said trustees are first to be paid all expenses, and such reasonable sum for their care and trouble as the judge of probate for New Haven district, may, from time to time, order and allow.

I appoint Henry White, Esquire, my executor of this my last will and testament. Dated December 31st., A. D. 1840.

SAMUEL J. HITCHCOCK. ·[L. s.]"

The testator died, on the. 31st of August, 1845, and his said last will and testament was duly proved and approved. The plaintiff took upon himself the execution, and accepted the trusts thereof. The other trustee refused to act.

At the time of making the will in question, the testator was married to Mrs. Narcissa P. Hitchcock, who survived him. He had four children by a former wife, all of whom are named in the will—viz., Laura—since deceased—Mary, the wife of Thomas D. Sherwood, and two sons, George and Charles. Laura died on the 31st day of March, 1851, and George died on the 29th day of July, 1850. The testator also left a minor son by his surviving wife, Samuel Whittemore Hitchcock. At the date of the will, Mrs. Hitchcock had three children by a former husband, who all survived the testator—viz., Narcissa P., the·wife of Robert F. Fisk, Emily P., the wife of William K. Mehaffey, and Julia P., the wife of Leon Pilatte.

After paying the debts of the testator, and the bequests to the Domestic Missionary Society and to Mrs. Hitchcock, the estate amounted to about forty thousand dollars; and the annual income of the same, after defraying the expenses of the trusts, exceeded two thousand dollars. This income was not exhausted by the annuities bequeathed to the daughters of the testator, and his sons, by the first wife.

At the time when the bill was brought, there were indigent pious young men in New Haven, Connecticut, preparing for the ministry, of the same religious denomination and doctrinal opinions with the testator, whose support would greatly exceed one thousand dollars per annum. In his lifetime, the testator was accustomed to contribute fre-

quently, for the support of young men of the same description with those named in the charitable bequest. The testator was a member, and for more than ten years previous to his death, an officer, of the First Congregational Church in New Haven, and his faith was the same with that of the Congregational denomination of Christians in this state. There were also pious indigent young men in New Haven belonging to the several denominations of Episcopalians, Methodists and Baptists, preparing for the ministry. But the number was small, compared with the number belonging to the first named denomination.

At the date of his last will, the property of the testator was of the value of about twenty thousand dollars, and the yearly income thereof did not exceed one thousand dollars.

The marriage of the testator with the wife who survived him, took place on the 24th day of December, 1834, at which time they entered into the following contract :

"Samuel J. Hitchcock and Narcissa P. Whittemore, having mutually agreed to be united in marriage, in consideration thereof do further agree, that if the said marriage shall take place, and the said Narcissa shall survive the said Samuel, then, instead of dower or any other claim upon the estate of the said Samuel, the said Narcissa shall be entitled to the principal of all the property she now owns, or an equal amount in value, to be thenceforth to her own use forever. And if the said Narcissa should decease, during the life of the said Samuel, then so much of the said property as the said Narcissa shall, by will, in writing, order and direct, shall, after the death of the said Samuel, be divided among the children of the said Narcissa and the said Samuel, in such shares and proportions as the said Narcissa shall, by her said will, order and direct. Or, if the said Narcissa shall prefer to bestow upon her three daughters, such a sum only, as shall be equal to the amount which the said Narcissa has received from the estate of their father,

and shall give the residue of her said property to the said Samuel, then said bequests shall take effect, immediately, under said will. An inventory of said property shall be made out and annexed to this instrument, as soon as convenient; and any changes which shall be made in said property, shall, from time to time, be mentioned in said inventory, and shall be considered property subject to this agreement, and made in fulfillment thereof. This agreement is made, and to be construed, according to the laws of the state of Connecticut; and all proper instruments shall be executed, which are necessary to give it effect upon said property, wherever the same may be situated.

Dated the 24th day of December, A. D., 1834.

SAMUEL J. HITCHCOCK,
NARCISSA P. WHITTEMORE."

At the time of said intermarriage, there came into the hands of the testator, of the property belonging to the said Narcissa P., $7,445.33 in real estate, and $29,383.60 in personal estate; and of the property of the said Narcissa P. Fisk, the sum of $11,858.61; of the property of the said Emily P. Mehaffey, the sum of $13,553.94; and of the property of the said Julia P. Whittemore, the sum of $11,079.94. The testator then being guardian of the three daughters of his wife, who were minors and unmarried, all the said property of the said Narcissa P. and of her minor daughters remained in his hands, and under his management and control until his decease, and was by him properly invested, in the names of his wife and her three daughters respectively. By the use of the property of his wife, his own estate was essentially benefited; but it was not benefited by the management and control of the property of her daughters.

After the decease of the testator, and in the same envelope with his last will, was found another will of earlier date,

duly executed by him, and uncanceled. But this fact was not particularly relied upon.

The claims of the parties, as stated in their several answers, will sufficiently appear from the arguments of the counsel.

The question, as to what decree should be passed in the cause, was reserved for the consideration and advice of this court.

*Baldwin* for the plaintiff. 1. The leading object apparent on the face of the will, was to apply his whole probable income ($1,000) annually to the support of the testator's four dependent children during their lives; and, *primarily*, to secure out of it for his daughters, a certain support in sickness and in health.

After providing for the fulfillment of his marriage agreement and bequeathing $600 to the missionary society, the will has respect only to the *management* of his *estate* and the distribution of the *annual income*. Of the estate itself, he makes no disposition, except as he bequeaths it to his trustee, "to the intent that the above gifts and the other provisions of his will may be fulfilled."

2. The provision for his children appears to have been so made as to secure to them, as far as possible, an annual income, which could not be anticipated, aliened, or taken by creditors.

The amounts payable to the daughters were measured by their wants, not exceeding $250 each, in health, and as much more as might be needed in sickness.

The sons could have no claim to any part of the income, till the annual expenses of the daughters, in case of sickness, were paid.

3. Having provided that in the event of the death of a daughter, the surviving daughter's income should be increased only to $350, besides expenses of sickness—the testator, to prevent any accumulation of surplus income undis-

posed of, and to give the benefit of it to a class of persons whom he had been accustomed to aid—directed, that any surplus of his income, to the extent of $1000, that may remain, shall be expended by *his trustees*, for the support of indigent pious young men preparing for the ministry in New Haven.

4. And if at any time, his estate should yield more than a net income of 1,000 dollars, thus settled on his children and contingently applicable to the charitable use, with the same intent of preventing an accumulation of surplus income during the lives of his children, to go, if undisposed of, to his heirs at law, he directs such surplus to be paid, in equal portions, to the Whittemore children, and his son Samuel, and their heirs.

The question then arises, how long is the trust to continue? and what is to become of the estate when the annual income shall no longer be needed for the four children of the testator?

We claim, that the trust will continue till the death of all the four children, and will then terminate, leaving the estate to descend to the heirs at law.

First, it was created "to the intent that the provisions of the will may be fulfilled," all of which, except the payment of the two preceding bequests, had reference to the annual distribution of the income only. To that intent, it must continue till their death; since, while one remains, the *whole* income may be needed for him. The form of the bequest to the *trustees*, apparently contemplates a trust that may be fully executed by them.

Secondly, there being no provision for the distribution of the estate, and the provisions for the pious indigent young men and for the children of his second wife, being made only from any contingent surplus of annual income, remaining after the payments to the primary objects of the testator's bounty, it is supposed that the trust must cease on their death. It must either cease at that time, or become a per-

petuity. Assuming the validity of the bequest for the pious indigent young men, if the trust for the surplus over the first $1000 continues for the children of Mrs. Hitchcock, it must equally continue, to the extent of the first $1000 of income for the pious indigent young men.

There is no principal or capital, bequeathed to the children of Mrs. Hitchcock. What they take, they are to receive annually from the trustees. It may be, that the entire income may be required to fulfill the bequest for the pious indigent young men, which is equally unlimited in time, and prior to the other.

If that bequest is valid and continues, the trust must also continue, for the income is to be annually expended by the trustees, who must necessarily select the beneficiaries.

It would follow, that the trust for the children of Mrs. Hitchcock, would be a perpetuity, incapable of being administered, and consequently void.

It is not to be presumed to have been so intended.

Our construction leads to no such absurdity. It leaves the estate to descend to the heirs at law, which, it is to be presumed, would be the desire of the testator, when the annual income was no longer required for his children.

In regard to the validity of the charitable bequest, it is sustained by all the authorities, and would have been held to be valid, if no trustee had been appointed to administer it. See 2 Sto. Eq., sec. 1137, 1148, 1154, 1158, 1162, 1169, 1191. *The American Bible Society* v. *Wetmore*, 17 Conn. R., 181. *Griffin* v. *Graham*, 1 Hawks, 96. *Bartlett and others* v. *King, executor*, 12 Mass. R., 537. *Vidal* et al. v. *Girard's executors*, 2 How., 127. *Loscomb* v. *Wintringham*, 7 Eng. Law & Eq., 164 and note. *Dutch Church in Garden Street* v. *Mott*, 7 Paige, 77.

During the existence of the trust, we claim, that the individual objects are to be selected, and the sums expended for each by the trustee, according to his discretion.

And if, any year, there are none who answer the requirements of the will, that the surplus shall accumulate and be expended on future objects as they arise.

It is the annual surplus beyond the 1000 dollars only, that is to be paid to the children of Mrs. Hitchcock, by the trustees, so long as the trust continues.

At its determination by the death of the four children for whose support it was created, the estate itself, not being disposed of by the will, descends to the heirs at law of the testator.

*C. A. Ingersoll,* for Sherwood and wife, and Charles Hitchcock.

The income of the estate of the testator placed in the hands of the trustees, is first to be applied to the support of Laura and Mary, his daughters.

1. Laura, one of the daughters, being dead, Mary (now Mrs. Sherwood) the other daughter, is now entitled to receive not only that which was provided for her during the life of Laura, but in addition thereto, the sum of 350 dollars a year.

The limitation of 350 dollars a year is not a limitation of the whole income, which Mrs. Sherwood is to receive, but only a limitation to the addition which she is to receive upon the death of Laura.

2. The trust in favor of the indigent pious young men, is a perpetual trust, to continue forever, and is therefore void.

It is void also for uncertainty. It can not be carried into effect. The objects of the trust are not sufficiently pointed out. You can not ascertain the testator's particular intent. *Gallego* v. *Attorney General,* 3 Leigh, 450. *Bridges* v. *Pleasants,* 4 Iredell Eq. R., 26. *Moggridge* v. *Thackwell,* 7 Vesey, 50, note *a.* *Morice* v. *The Bishop of Durham,* 9 Vesey, 399. *Vezey* v. *Jamson,* 1 Sim. & Stu., 69.

3. If the trust in favor of the pious young men is to be executed, it can only be executed, *cy pres* ; · and it can not be executed, in this country, in that manner. The courts in this country do not go the length that they do in England, in executing a charity, *cy pres.* Here, the particular intent must be clear. *Executors of Burr* v. *Smith et al.,* 7 Vermont, 241. *Vidal* v. *Girard's exrs.,* 2 Howard, 127.

4. As to the rule in England, see 1 Jarman on Wills, 247. *Moggridge* v. *Thackwell,* 7 Vesey, 69. 2 Sto. Eq., § 1181, 1167, 1168, 1169, 1170. *Mills* v. *Famer,* 19 Vesey, 486, 487. *Loscomb* v. *Wintringham,* 7 Eng. L. & E. R., 164.

As to the American rule, see note 1 to 1 Jarman on Wills, § 274, 216. 4 Kent's Com., 508. *McCarte* v. *Orphan Asylum Society,* 9 Cowen, 437. *Moore* v. *Moore,* 4 Dana's Ken. R., 357. *Dashiell* v. *Attorney General,* 5 Harr. & John's, 392. 4 Kent's Com., 508, note *a.*

5. The trust to the pious young men being void, as it has not been sufficiently created, the next of kin must take. What therefore was intended for them, must go to the heirs at law. 2 Sto. Eq., § 1183.

6. The trust in favor of the children of the wife of the testator is not sufficiently created. It is void, for two reasons. 1st, it is a perpetuity ; 2d, it is void, because there is no practical way of carrying it into effect. It could not be carried into effect, if the trust is a perpetual one.

7. The trust being void, what was intended to be bequeathed, goes to the heirs at law.

8. If either the trust in favor of the pious young men, or in favor of the children of Mrs. Hitchcock, is void, on the ground that it is a perpetual one, both must be void : one can not be good and the other bad.

9. If the bequest to the pious young men should be declared valid, then, if in any one sense the income belonging to such

White *v.* Fisk and others.

trust shall be unclaimed or unapplied, such income so unclaimed or unapplied shall go to the heirs at law.

*Dutton,* for S. W. Hitchcock.

The counsel for S. W. Hitchcock adopts the brief of the counsel for Robert Fisk, with the following qualifications.

1. When the testator made his first will, he supposed the income of his property would not exceed 1000 dollars. Supposing that there could be but a small surplus, if any, he gives that to the indigent young men.

2. After his second marriage, in view of the benefit which he would derive from his wife's property, and supposing that if the income of his property should exceed 1000 dollars, it would be owing to that, instead of giving the surplus to the indigent young men, he gives it to his wife's children.

The words "settled as above," refer to the bequests to his children, according to the usual meaning of the words.

3. If the devise to the indigent young men is void, the amount which would have gone to them is intestate, and S. W. Hitchcock will take one-third, so far as it is devised from real estate, and one-fifth of what is devised from personal estate. He would be an heir to the real estate of the deceased children, it being ancestral.

4. The devise to the indigent young men was to continue only as long as the devise to the children of his first wife would continue.

5. If the devise to the children of his second wife was a disposition in fee, S. W. Hitchcock would take one-fourth of it, there being four children.

6. If the same devise would last no longer than while there is a "surplus," that is, while there is an income, a portion of which is first given to some one else, then S. W. Hitchcock takes one-third of the real estate, and one-fifth of the fee-simple estate, as heir at law.

*R. I. Ingersoll* and *Beach* for Robert F. Fisk and wife, Wm. K. Mehaffy and wife, and Leon Pilatte and wife.

*First.* During the joint lives of Charles and Mary, Charles takes not exceeding $500, and Mary not exceeding $350 annually, unless in case of sickness of the latter. If either daughter die, the annual payment to her is to be paid to the surviving daughter. The addition to the survivor is what was given to the deceased. But upon the construction claimed, the survivor takes not only the portion of the deceased, but $100 more. The testator did not intend that the legacies to his children should in any event exceed $1000 per year, but on the construction claimed, Charles taking $500, if Mary takes $600, the legacies amount to $1100 per year.

The only construction of this clause consistent with the subsequent provisions of the will, is, that Mary takes but $350 in the whole, unless sickness requires it.

*Secondly.* The bequest to the pious indigent young men is vague, uncertain and void.

It is impossible to determine, who were the objects of the testator's bounty, to designate who are pious, who are indigent, who are young, within his meaning, or what kind of preparation, or what ministry he meant.

If the bequest is valid, "any surplus income that may remain to the extent of $1000 per annum" means the difference between the annuities to the children, and $1000. He supposed the income of his estate, at the time of his making the will, (as was the fact) would be about $1000.

In the contingency of one or more of his children dying, the annuities would vary from $600 to $850. It is the contingent surplus between these amounts and $1000, which the testator was contemplating in this bequest. If the clause by itself is ambiguous, the succeeding clause relieves it from all embarrassment. "If the net annual income of my es-

tate, as above settled, should at any time exceed $1000, the surplus I direct," &c. "As above settled," *i. e.*, he has given part of the $1000 to his children, and part contingently to the indigent young men. It can at no time be less than $1000 : he now provides for its exceeding that sum.

This clause is consistent with our construction of the preceding one, and inconsistent with any other construction, and being the last clause in the will, must control.

*Thirdly.* Whether the bequest is valid or invalid, the trust ceases on the death of the annuitants.

It is only a contingent surplus, remaining after paying the annuities, which is given to the indigent young men.

Suppose the annuities to the children, together with sickness expenses, should absorb the entire $1000, up to the death of the surviving annuitant : would the indigent young men, under this contingent bequest, (the contingency never having happened,) be then entitled to the whole $1000 by virtue of this bequest of " the surplus that may remain ?"

*Fourthly.* During the continuance of the trust, the Whittemore children are, at all events and under all circumstances, entitled to all the surplus income over $1000 per year.

The language used is too explicit to admit of doubt or question. In giving the annuities and the bequest to the indigent young men, the testator carefully guards, that in no event, they shall exceed $1000 per annum.

The only remaining question presented by the bill, is as to the disposition of the principal of the estate, after the trust ceases.

It will be time enough to decide this question, when it legitimately arises. It may be half a century hence, when the last annuitant dies. Let the point be then settled, by the parties then in interest ; amicably if they can, if not, let them and the court which is to pass upon their respective rights, have the mutual benefit of the presence of the parties who are to be affected by the decision. If, however, that

question is to be considered, we claim that after the trust ceases, the children of the testator's (then) present wife and their heirs, are entitled to the principal in fee.

They will then be entitled to the income of the whole.

The devise to them and their heirs, is not of the excess over $1000 per annum, but if the income exceeds $1000 per annum, he gives " the surplus" to them and their heirs, using the word with the same meaning as in the preceding clause, *i. e.*, all that may remain after satisfying the previous exigencies of the will. The testator intended, by this clause, to indicate his wishes as to the disposition of the residue of the estate, after the preceding provisions of the will were satisfied.

If we are right in our claim, that upon the cessation of the trust, the Whittemore children would be entitled to the whole income, the law will vest in them the principal of the whole estate in fee.

1. This would be so, even if there were no words of limitation. *Challenger* v. *Shephard*, 8 T. R., 597. *Elton* v. *Sheppard*, 1 Bro. C. C., 532. *Phillips* v. *Chamberlain*, 4 Vesey, 51. *Rawlings* v. *Jennings*, 13 Vesey, 39. *Adamson* v. *Armitage*, 19 Vesey, 418. *Stretch* v. *Watkins*, 1 Madd., 253. *Clough* v. *Wynne*, 2 Madd., 188. *Haig* v. *Swiney*, 1 Sim. & Stu., 490. *Hawkins* v. *Hawkins*, 7 Sim., 178. *Clarke* v. *Gould*, 7 Sim., 197. 2 Williams on Exrs., 1027. *Earle* v. *Grim*, 1 John. Ch., 494.

2. It is an established rule, that a devise of the rents and profits, is a devise of the land. *Kerry* v. *Derrick*, Cro. Jac., 104. *Maundy* v. *Maundy*, 2 Stra., 1020. *Allen* v. *Backhouse*, 2 Ves. & Beam, 74. 6 Greenleaf's Cruise's Dig., 176, n. *Reed* v. *Reed*, 9 Mass., 372. *Goldin* v. *Lakeman*, 22 E. C. L. R., 22.

3. When the whole estate is given in trust, to pay the income to one and his heirs, the fee passes. The statute of

uses in force in this state, executes the use in the *cestui que trust.* 1 Sw. Dig., 138. Kirby, 368.

This principle has been uniformly recognized by courts of equity. See cases above cited, also, *Page* v. *Leappingcott,* 18 Vesey, 462. *Barr* v. *Scott,* 2 Leigh, 356. *Knight* v. *Selby,* 3 Man. & Gr., 92. *Logan* v. *Moore,* 7 Dana, 74. 6 Greenleaf's Cruise's Dig., 211.

4. If the Whittemore children are not entitled to the whole of the principal, they are entitled to all the principal, over and above such part thereof as would produce $1000 per annum. The most unfavorable construction can not but concede, that the surplus income over $1000 is given to them and their heirs.

Under the foregoing rules of construction, they will be entitled to such proportion of the principal of the whole estate, as the income to which they are entitled, bears to the whole income.

CHURCH, C. J. A late writer on the law of devises has remarked, that gentlemen of the legal profession should seldom draw up their own wills, as many such have been the subjects of litigation, and of the most difficult interpretation. The propriety of this suggestion is, in some degree, verified in this case.

The late Judge Hitchcock, whose will we are considering, was one of the most learned and distinguished members of the Connecticut bar; and yet, we find his executor and trustee, himself also a lawyer of great ability and professional experience, presenting this will to this court, and asking its direction, how he may safely execute the duties and trusts imposed upon him by it. Under such circumstances, we too may well doubt what advice to give.

There are several prominent facts apparent as well on the face of the will, as disclosed by the evidence, properly admitted by the superior court, which have an important bear-

ing upon its construction and its application to the testator's family and estate.   He seems to have believed, that the annual income of his property would be about one thousand dollars, and to have assumed this, as a proximate basis of his bequests to his children, apparently so scanty, when in truth, this income proved to be more than double that sum. Aside from his bequest to the Domestic Missionary Society of Connecticut, he has made no ultimate disposition of any part of his own property, but has confined himself to the bestowment of its supposed annual income, leaving the principal, apparently unthought of, or at any rate undisposed of, expressly or by any appropriate language used by him.

The sons and daughters named in the will, were the testator's children by a former wife.   By his surviving widow, Narcissa P. Hitchcock, he had a son Samuel W. Hitchcock, and his wife Narcissa had several children by a former husband ;  all these survived the testator, and are claimants under his will, and respondents in this bill.

He seems also to have forgotten, that some of his children by his first marriage, named in his will, might die, leaving children, and be left unprovided for, while the trusts in his will continued, as has already proved true, as we are informed, since the arguments in this case were heard by us.

The testator was a member of a Congregational church in New Haven, and so were both the persons constituted by him to be the executors and trustees of his will.

The provision for the daughters, Laura and Mary, is quite intelligible, although a seeming obscurity is thrown over it by the language, " such as may be needed to support them comfortably in health," &c., which may seem to imply a power and discretion in the trustees, to examine constantly the exact necessities of these children, and measure their disbursements accordingly, or even to reduce them to nothing, if the children, by marriage or otherwise, should be raised above want or actual indigence, thereby depriving

them entirely of this parental bounty. We do not believe the testator intended any such thing; and we think this should be considered and treated as an absolute bequest of two hundred and fifty dollars annually to each of these daughters, so long as both should live, and as much more to each one respectively, as might be necessary to defray the cost and charges of her sickness; and upon the death of either, that the survivor should receive three hundred and fifty dollars, or one hundred dollars in addition to the sum first given, annually, during her life, with the same allowance for sickness expenses. Laura has since died; upon which event, Mary, the survivor, became, and is, entitled to, the aforesaid sum of three hundred and fifty dollars, and sickness expenses. The sums thus specified, the testator supposed necessary to support these daughters comfortably in health.

The bequests of income to the two sons of the testator, George and Charles, are equally free from doubt. To each, the sum of two hundred and fifty dollars annually, during their lives, and five hundred dollars to the surviving son. And then, if only one of these four children shall survive the rest, he shall be entitled to the sum of six hundred dollars annually, and no more, for his life, unless sickness shall require a larger sum. Since the testator's death, his eldest son has deceased, and the survivor, since then, has been entitled to receive five hundred dollars per annum.

It will be seen, that in making all these bequests to these four children of his first wife, they are given for their respective lives, no part or portion going over to their children or heirs.

We can not believe that Judge Hitchcock intended to disinherit such lineal descendants; and we should very reluctantly be brought to give a construction to this will, which would produce such a result.

Whether the bequest to the young men, hereafter to be noticed, be valid or void, it becomes necessary to determine by what rule the testator intended the amount of it to be annually ascertained. The clause in the will referring to this subject, is, that " Any surplus income that may remain, to the extent of one thousand dollars per annum, I direct to be expended, by my said trustees, for the support of indigent pious young men, preparing for the ministry in New Haven;" from which it has been inferred, that one thousand dollars of such surplus income, if so much there should be, was intended for this object ; but the next following clause of the will shows, we think, that such was not the purpose of the testator; for in it, he says, that " If the net annual income of my estate, as above settled, should at any time exceed one thousand dollars, then the surplus income I direct to be paid in equal portions to the children of my present wife ;" from which it is obvious, that he intended that one thousand dollars should satisfy the legacies before given to his four children, and also the bequest to the indigent young men, because he gives the surplus beyond that to an entirely different class of legatees—his wife's children. We think, therefore, that the sum intended for the indigent young men, was the annual difference between the sums expended upon the testator's four children above named and one thousand dollars. Such sum or difference, if this bequest be valid, is payable to them, and if not, it is intestate, undisposed of by the will, and is payable to the heirs of the testator.

A more interesting and perplexing inquiry than any other suggested by this will, is, whether this bequest to the " pious indigent young men" can be sustained and carried into effect? All the parties who, on this record, make claim before us, unite in saying that it can not. And the trustee only asks us, whether it can ? We think it can not be sustained.

And while we acknowledge the benevolent and charitable

intention of the testator in this gift, and the laudable purpose he conceived, we can not see how, confining ourselves within what we believe to be our legitimate powers of interpretation and judgment, we can carry that intention into effect.

This legacy is not given to any college or institution, nor to any association of persons corporate or voluntary; nor is any such alluded to, by which the charity can be dispensed; but only as a legal interest to trustees, to be sure, to be ex pended or disbursed for the support of individuals, each one of whom falling within the description named, has an equita ble or beneficial interest in the fund, and which he must have a right to enforce, if any one can.    And who are these individuals?    They are the indigent pious young men, preparing for the ministry in New Haven.    The difficulty of carrying this provision into effect, is as great as if no trustee had been appointed; for no rule of determination, selection or apportionment, is furnished by the will, and no positive or discretionary power of determination, &c., bestowed.

It has been suggested, that the power of selecting the beneficiaries under this bequest, and of apportioning the sums of money annually to be disbursed among them, is in the trustees.    We do not so understand it.    Their only power is to expend the money—to pay it out, to the persons entitled, under the will, to receive it.    Such a power can not legally be inferred from the fact, that the testator, and the trustees appointed by him, were members of a Congregational church in New Haven; and for us to infer it from this fact, would be to substitute a very liberal conjecture, in the place of legitimate interpretation of language and legal judgment.

Who, then, are entitled to this bequest; or, if the trustees have the power suggested, how can they exercise it?    What is meant by "indigent young men?"    No rule of discrimination is given.    And who but Him that knoweth the heart can

determine, who are the pious ones intended by the testator? Surely, he did not intend all who merely make professions of piety. And what was meant, by preparing for the ministry in New Haven? Was it a preparation, by a course of theological or academical study?

If a bequest, for the purpose indicated in this will, in this respect, had been made to a college, a theological institute— the Congregational society of which the testator was a member—or other body which had, or might have, a supervision or interest in the general object of this charity, and rules for its management, it would have presented a very different case; but as it is, we think the provisions of this will in this matter, have been left by the testator quite too loose and indefinite for judicial action.

Our statutes of descent and distribution have established rules for the distribution of estates, founded upon what are supposed to be the ordinary principles and impulses of natural affection and of equity; and, in the absence of other evidence, these may well be followed, as the best exponents of intention.

Every man has a right, by his last will and testament, to change these laws in his own case, and make a law for himself, if he will; but to do this effectually, he must not only observe prescribed formalities with exactness, but he must speak in a manner leaving no reasonable doubt of his purpose; and if he does not do this, the general and prescribed laws should be permitted to have their just and equitable effect.

There is a class of cases, the authority of which we recognize, where the individual beneficiaries under a will, but included in a definite class, are left uncertain, and yet the bequest for their benefit has been sustained. But these are cases, where the gift has been to some corporate or voluntary association, whose business and duty it becomes, to dispense the charity; or where power is very certainly conferred by

the will, upon the executor, trustee, &c., to discriminate and select, or to apportion the application of the funds. Such was the case of *Bull* v. *Bull*, 8 Conn. R., 48, in which a remainder was bequeathed to executors, in trust for the most needy of the testator's brothers and sisters, with express authority and power to the executors to make distribution to the most needy, according to their best discretion. "Here," says the court, "a rule is given by which the persons can be designated"—the most needy.

The same discretionary power was expressly conferred in the cases of *Gower* v. *Mainwaring*, 2 Ves., 87; *Moggridge* v. *Thackwell*, 7 Ves., Jr., 36; 13 *ib.*, 416; *Attorney General* v. *Price*, 17 ib., 371; *Witman* v. *Lex*, 17 Serg. & Rawle, 91; in which last case, the court recognizes the principle, that bequests for uncertain objects, &c., may be sustained, where there is a discretionary power vested anywhere over the application of the charity. 9 Ves., 399. 10 *id.*, 522. 1 *Sim. Stu.*, 69. But no such discretionary power, as we believe, is given by this will.

Our courts have recognized the validity of charitable bequests, not only where the gifts have been to a person or corporation, having a legal capacity to take, but also to voluntary unincorporated associations existing for benevolent or charitable purposes, and have supplied these latter with trustees to receive, hold and manage the funds given for the uses designated, even though these were somewhat undefined and uncertain. And so also, bequests to individuals or classes of individuals, in nature of charities, where the testator has clearly given a power to some person or persons, to exercise a discretionary authority in their management, so that uncertainty may be made certain; and it is believed that we have gone no further in this direction. *American Bible Society* v. *Wetmore*, 17 Conn. R., 182. *Bull* v. *Bull*, 8 Conn. R., 48. *Burr* v. *Smith*, 7 Vt. R., 241. *Reformed*

*Dutch Church* v. *Mott* et. al., 7 Paige Ch., 77. *Inglis* v. *Sailor's Snug Harbor*, 3 Peters, 99.

Our revised statute (tit. Land, 454) recognizes these charitable and pious purposes and uses, and protects them; but it seems, by fair intendment, to require that they shall be reasonably certain and definite; for its language is, they "shall ever remain to the uses to which they have been, or shall be, given or granted, according to the true intent and meaning of the grantor, and to no other use whatever." To carry out this provision of the law, the intention of the donor must be certain, as well as the objects of his bounty reasonably definite, and the charity confined to the very use to which it was destined.

There may be other cases in this country, and there certainly are many in England, in which charities, more equivocal and uncertain than the one we are considering, have been sustained; but we are persuaded that this has been done either avowedly, or under the influence of the principle of *cy pres.* Several such cases have been brought to our notice on this argument; but we repel the authority of them, as we have not adopted that principle into our system of jurisprudence. We think it inconsistent with the limited and defined powers of the judiciary, as understood and approved in this state.

By the theory of the English constitution and laws, the king is *parens patriæ,* the guardian of infants, the dispenser of charities, and his chancellor, as the keeper of his conscience, acts in his stead. The doctrine of *cy pres,* is a doctrine of prerogative; and it seems to be this, that if it can be seen that a charity was intended, by a testator, but the object specified can not be accomplished, the funds may be applied to other charitable purposes, or that the chancellor may seize them as a sort of waif, and apply them as his, or the king's good conscience, shall direct. 2 Sto. Eq., 424, § 1182. In this way the chancellor substitutes himself

in the donor's place, and really makes the will himself. This doctrine is inconsistent with the plain provisions of our statute, above referred to, on this subject, and which forbid the perversion of the charity; and the English judges have themselves expressed fears of the tendency of the power. "This doctrine," says Lord Kenyon, in *Brudenell* v. *Elewes*, 1 East, 451, "has not been much approved, and we must see that it does not run wild;" and Lord Chancellor Eldon, in 7 Ves., 399, says, "it is not proper to extend it one step further." 1 Maddock's Ch., 49. Cooper's Eq. Pl., 27. 2 Fonbl. Eq. Ch., 1, § 1. *Lord Falkland* v. *Bertie*, 2 Vern. R., 342. 3 Peters, U. S. R., app., 481. *Trustees of Baptist Association* v. *Hart*, 4 Wheat., 1.

It is true, that the later cases in England have modified, in some measure, the former extreme administration of the principle of *cy pres.*

The charity intended for the indigent young men, being, in our opinion, too vague and uncertain for effect, a question is suggested here—to whom shall the moneys intended for them be paid?

The testator has directed, that the surplus income of his estate, beyond one thousand dollars, shall be paid, in equal portions, to the children of his then present wife, Narcissa, and their heirs. But it is evident, that the testator did not intend, that any portion of this one thousand dollars should go to the children of his wife—there being no unexpended residuum of this sum. It must therefore, as we have already intimated, be treated as intestate, and be distributed to the testator's heirs. *Green* v. *Dennis*, 6 Conn. R., 292. *Brewster* v. *McCall's Devisees*, 15 Conn. R., 274. *Baker* v. *Hall*, 12 Ves., 497. *Jones* v. *Mitchell*, 1 Sim. & St., 290.

This trust is not a perpetual one, and was not so intended. The chief object of the testator in creating it, was, that his first four children should be provided for, from the annual income of his property, during their lives; and he looked

to the 1000 dollars for this purpose, and all beyond, he considered as uncertain ; and yet directed, if there should be a surplus income, above the 1000 dollars, that such surplus should be annually paid to the children of his wife, Narcissa, and their heirs. But we think it obvious, from the whole tenor of the will, that he did not intend that these annual payments should continue, beyond the time when there was no one surviving, who could take any part of the first thousand dollars. If he did, the bequest would be, that this annual income of 1000 dollars would be an accumulating fund forever, with no one to take it ; and the principal of the estate must remain, too, as a fund to raise the surplus income for the children of his wife, Narcissa, and their heirs.

We do not suppose this was intended by the testator ; and if it was, such purpose can not be executed. The law will not sanction a perpetuity, thus created for a private interest, and not for a charity. 1 Jarman on Wills, 219, 264.

If the trust expires, upon the death of the survivor of the testator's children by his first marriage, his intention in respect to all his children will best be fulfilled. If there be a surplus beyond the annual income of one thousand dollars, while the trust continues, all the children will receive their respective portions of income at the hands of the trustees, according to the provisions of the will, as we understand them, and according to law ; and upon the death of such survivor, the entire estate or principal fund remaining, not having been by the will in any way disposed of, will go to the heirs general of the deceased, in fee.

The result of the views we have expressed, will lead us to the following advice, to wit : That from the net annual income of the estate in the hands of, or subject to, the trustee, he pay to Mrs. Mary Sherwood, the surviving daughter of the testator, during her life,* the sum of three hundred and

---

* It is understood, that since the argument and decision of this case, Mrs. Sherwood has deceased, leaving a child or children.

fifty dollars annually, for her sole and separate use ; and in case of sickness, such further annual sum as may be necessary, to defray the cost and charges of such sickness.

And to Charles Hitchcock, the surviving son of the testator by his first marriage, subject to the aforesaid payment to Mary Sherwood, the sum of five hundred dollars annually, during his life ; and in case of the death either of the said Mary or Charles, then to the survivor of them, during his or her life, the sum of six hundred dollars annually, and such additional sum as the sickness of such survivor shall require.

And also, if said income shall be more than sufficient to make the aforesaid payments, then the sum or balance remaining, or the difference between what may be necessary to make such payments, and the sum of one thousand dollars in any year, such sum or difference to be paid to the heirs at law of the testator.

And if the net annual income of said estate has exceeded, or shall exceed, the sum of one thousand dollars in any year, such surplus income, beyond one thousand dollars, to be paid to the children of Narcissa P. Hitchcock, the surviving widow of the testator, in equal portions, and to their heirs annually, so long as the said Mary Sherwood or Charles Hitchcock shall live. But, upon the death of both the said Mary Sherwood and Charles Hitchcock, said trust to cease and be determined, and the estate of the testator, then remaining in trust in the hands of the trustee, to be distributed in fee, to the heirs at law of the said Samuel J. Hitchcock.

In this opinion the other Judges concurred.

Decree accordingly.