# REPORTS.

## COOS,

### JULY TERM, A. D. 1857.

### HOPKINS *v.* THE ATLANTIC AND SAINT LAWRENCE RAILROAD.

In an action against a railroad by the husband to recover damages for an injury to the wife, caused by carelessness of the defendants in the management of their trains, damages may be recovered for loss of the wife's services, and for expenses incurred by the husband in her cure, after the commencement of the suit.

In such case the actual expenses incurred by the husband, after the commencement of the suit, may be given in evidence to show the amount of his damage.

If the condition of the wife is such at the time of the trial as to disable her for the future, and require further expenses for medical and surgical treatment, the jury may give damages for prospective expenses and loss of service.

The jury may in their discretion give exemplary damages where a personal injury has been caused by the gross carelessness of a railroad in the management of their trains.

CASE. The declaration contained two counts, in both of which it was alleged that the defendants were carriers of passengers through sundry towns in the county of Coös. In the first count the plaintiff alleged that on the first day of December, 1854, he took passage in the defendant's train of passenger cars, to be carried for the usual fare from Northumberland to Milan, and that the defendants, by their servants, so negligently, carelessly and unskillfully managed that train and a train of their freight

cars, that the freight train run into and upon the passenger train, and by reason of the collision and the breaking in of the car in which the plaintiff was carried, he " was thereby thrown down with great violence, and was thereby wounded and injured," &c.

The second count alleged that Mary Hopkins, the plaintiff's wife, took passage on the same day, in the same train, to be carried between the same points, for a like fare, and contained the same averments as to a collision by the carelessness of the defendants, through their servants, and that the plaintiff's wife was by the same collision thrown down and greatly injured, " whereby and because the plaintiff is obliged, as her husband, to provide for her support," he has been put to great expense in providing her medical and surgical aid, to wit, the sum of one hundred dollars, and during all the time since, up to the date of the writ, has lost the labor, comfort and society of his wife."

The cause was tried on the general issue, and the defendants asked the court to instruct the jury that no recovery could be had for the medical or other expenses of the wife, after the date of the writ, and that no greater sum could be recovered for such expenses than the sum of one hundred dollars, stated in the writ.

The court declined so to instruct the jury, and instructed them that they might find, from the evidence, what the plaintiff had expended for his wife in medical and other expenses ; also, for the loss of her services and society, not only up to the commencement of the suit, but also such expenses and loss, up to the time of the trial, and estimate the future expenses and loss, if, from the nature and extent of the injury, and her present condition, there would be any such expenses or loss in future, arising directly from, and the necessary result of, the original injury, and include the whole in their verdict, even though the whole amount of the expense should exceed the sum of one hundred dollars, stated in the declaration as the sum thus expended at the commencement of the suit.

The court also instructed the jury that if they should find the defendants were guilty of gross negligence at the time of the

collision, and that the plaintiff's injury was caused by such gross negligence, they might in their discretion give the plaintiff exemplary damages.

To which rulings and instructions the defendants excepted, and also objected that the two counts could not be joined in the same action ; but the objection was overruled.

The jury found a verdict for the plaintiff, which the defendants moved to set aside, and in arrest of judgment.

*Burns & Fletcher*, for the defendants.

The declaration alleges that the injury to the plaintiff was caused by the negligence and unskillfulness of the defendants' servants ; and the court charged the jury that if they should find that the defendants were guilty of gross negligence, they might in their discretion give the plaintiff exemplary damages.

The owner of a stage, boat or railroad, is liable for injuries to passengers by the negligence of the driver, master or conductor. And the question then arises, to what amount ? The law says the damages should be commensurate with the injury sustained ; if less, the plaintiff is injured without an adequate redress ; if more, the defendant is punished as for a crime, in addition to making a full and fair remuneration for a personal wrong.

It will be conceded that the above is the established rule of damages in the great majority of cases, both in actions on contract and for torts.

But where the injury is to the person, or character, or feelings, and the facts disclose fraud, malice, violence, cruelty, or the like, the damages operate as a punishment, for the benefit of the community, and as a restraint to the transgressor. Mayne on Damages 13.

And such is the character of all the cases cited in *Whipple* v. *Walpole,* 10 N. H. 130, viz : *Allen* v. *Eddington* was for goods obtained by fraud, and the jury were authorized to give damages, for the punishment of the fraud, over and above the value of the goods.

*Wort* v. *Jenkins,* another case there cited, was for beating the

plaintiff's horse. The jury gave damages beyond the value of the horse, or smart money; there being proof of wanton cruelty on the part of the defendant.

The third case cited, *Tillotson* v. *Cheetman*, was for a libel, in which the evil example of defendant's conduct was taken into consideration for increasing damages.

The fourth, *Hackle* v. *Money*, was trespass for an assault and false imprisonment, on a general warrant of a secretary of state, hostile to the liberty of the subject, and clearly illegal.

And the last, *Tallage* v. *Wade*, was for debauching the plaintiff's daughter.

All these cases disclose some turpitude, or moral wrong in the defendants, and the rule of damages, as expressed by Chancellor *Kent*, is too well settled in practice and too valuable in principle to be called in question.

But in this case there was no wrong on the part of the defendants, and the rule for exemplary damages will not apply.

For acts of omission and neglect, an agent is not personally liable, but only the principal. *Connell* v. *Voorhies*, 13 Ohio 523, 542; *Denny* v. *The Manhattan Co.*, 2 Denio 116, 118; because the duty is the principal's, and not the agent's; but for substantive acts of torts, or *tortious negligence*, there is no doubt that an agent is personally liable. *McFarland* v. *McKnight*, 6 B. Monroe 500, 506.

We say, then, that the principal is not liable to exemplary damages for the gross negligence of his agent; and the case of the "*Amiable Nancy*," in 3 Wheaton 546, is directly in point. It is there decided that on an illegal seizure, the original wrongdoers may be made responsible beyond the loss actually sustained in a case of gross and wanton outrage. But the owners of the privateer, who are only constructively liable, are not bound to the extent of vindictive damages.

*G. C. Williams*, for the plaintiff.

PERLEY, C. J. The objection to joining the two counts in the

same action would properly be taken by demurrer, or motion to arrest the judgment, and not on trial. However taken, it must be overruled. The claim in each count is for an injury to the husband alone. The wife has no legal interest in the suit. 1 Chitty's Pl. 46, 61; 2 Chitty's Pl. 375, (note.)

The court was moved to instruct the jury that nothing could be recovered for loss of the wife's services and society, or for expenses incurred on account of her injury, after the commencement of the suit. No objection was taken on the ground of variance in this respect between the declaration and the proof, and none can be taken now. Objections of that kind are considered as waived, unless taken on trial. If taken then, they may be removed by amendment. *McConnihe* v. *Sawyer*, 12 N. H. 396, 405.

The question is therefore general in this case, whether the husband, in an action brought by him to recover his damage for an injury to the wife, may recover for expenses incurred, and for the loss of the wife's services, after the commencement of the suit.

The plaintiff could maintain but one action for the same injury to his wife. All the damage which he could recover he must claim as the direct and necessary consequences of the wrongful act, or the default of the defendants; and that act or default was not divisible, and had no continuance beyond the time when the accident happened. This has no resemblance to the case of a nuisance continued after the commencement of the suit; for the continuance of the nuisance is another injury and a new cause of action. The wrong to the plaintiff was, in this case, entire and complete at once, though the injurious consequences might remain for an indefinite period afterwards. The defendants were guilty of but one wrong, and can be subjected to but one action for it to the same party.

The real extent of the injury which the plaintiff's wife received, and the actual amount of his damages, would not at all depend on the time when the action was brought or tried. He might commence his suit forthwith, or delay it for years; in either case the same question would be tried and the same damages recoverable;

though, if the trial were delayed, the delay would be likely to afford more satisfactory means of ascertaining the real extent of the wife's injury, and the actual amount of the husband's damages.

When an injury is received of such extent and character as must disable one from labor, and require nursing and medical treatment, the loss from inability to labor and the expense of medical treatment are the necessary and uniform consequences of such an injury. They are not special damages, in the sense of that term as it is used in the law of pleading and evidence. They are not caused by any incidental fact, or by the peculiar situation and circumstances of the party, but are the natural and uniform effects of the injury itself. And when the injury to the wife is once shown to be of such a nature, the damages to her husband, from the loss of her services and society, and the expenses of her cure, follow uniformly and by legal necessity from the relation of husband and wife, which entitles him to her services and society, and charges him with her support. *Dickinson* v. *Boyle*, 17 Pick. 78; *Smith* v. *Sherman*, 4 Cush. 408; *Furlong* v. *Pollys*, 30 Me. 491; *Styles* v. *Telford*, 10 Wend. 338; 1 Chitty's Pl. 333, 385; 2 Greenl. Ev., sec. 254.

Money, therefore, expended by the plaintiff for medical and surgical treatment of his wife, would not be special damages, in the legal sense of the term, and evidence of such expenses might be received on trial without any special allegation of that particular item of damage.

If the action were tried soon after the injury was received, and the wife at the time of the trial was still disabled from service, and still required medical treatment, and her injuries were such as must leave her disabled for the future, and involved the husband in additional expense, it is quite clear that he would not receive a just compensation for the injury which he had sustained, if he were allowed to recover for nothing but the sums already expended and the loss of her services up to that time. The law in such case gives damages for the prospective loss and expense. The jury would be obliged to estimate, as well as they could from the condition in which they found the wife at the time of the

trial, the whole ultimate loss and damage of the husband, in the same way and on the same principle that they would estimate such damage for a like injury to himself.

The evidence, though it introduces subsequent facts, is referred in law to the time when the injury was received. The legal inquiry is, what was the extent of the injury and the amount of the plaintiff's damage at the time of the accident? for the wrong was all done and the whole injury received then, and the plaintiff's right of action was complete to recover at once, in a single suit, for all the consequences of the defendant's wrong; otherwise, in order to give the plaintiff adequate remuneration for his injury, he must be allowed to maintain successive actions for his subsequent losses and expenses, as they might accrue from time to time, and the defendants might be subjected to separate suits for every surgeon's bill that the husband should pay for treatment of the wife's injury, and for every month of her services that he should lose. Subsequent facts are therefore proper evidence, and generally the most satisfactory evidence, to show the nature and extent of the original injury to the wife, and the actual amount of the husband's damages. Down to the time of trial the plaintiff may show, with more or less exactness, what his actual losses and expenses have been. As to the future, the jury can only make a probable estimate.

Evidence of the actual condition of the wife, or of the plaintiff himself, at the time of trial, is admissible only on the same ground; that is to say, for the purpose of showing what the nature and severity of the injuries really were when they were received. At first it might be entirely uncertain how serious the accident would turn out to be; but that would be proved more or less fully by experience at the time of the trial. And so in respect to damages from loss of service and from necessary expenses. The extent of the injury and the consequent damage to the plaintiff could then be better known, by actual experience, than could be conjectured and foretold from evidence confined to the time when the injury was received. And evi-

dence was properly admitted on trial to show the actual amount of the plaintiff's expenses down to that time.

In *Lowry* v. *Walker*, 5 Vt. 181, it was held that evidence as to the measure of damages was admissible, though the facts arose after the action was brought; and *Herring* v. *Tomlin*, 28 Eng. L. and E. 142, goes to sustain the same point. So in *Dearborn* v. *The B., C. & M. Railroad*, 4 Foster 179, the jury were allowed to view the land of the appellant, that they might see the actual effect produced by the laying out and maintaining of the railroad down to the time of trial; though the question was as to the amount of damage to the land by the laying out and establishing of the road, and the jury were considering on appeal the same question which the commissioners had considered before the road was built, we do not see how that can in principle be distinguished from this.

We are therefore of opinion that the plaintiff might recover damages for losses and expenses down to the time of trial; and for prospective losses and expenses, such as the jury might give, forming their judgment from the actual state of the wife's injuries, according to the evidence produced on trial; that the plaintiff was not confined to the one hundred dollars named in the declaration as the amount expended at the time when the suit was commenced, as he was entitled to recover for losses and expenses incurred afterwards; that evidence might be admitted of his actual losses and expenses down to the time of trial, and that, of course, it was not necessary in declaring to specify the items and particulars of such expenses and losses.

The court charged the jury that if the injury to the plaintiff was caused by the gross negligence of the defendants, they might in their discretion give exemplary damages. It is objected that this is not a case for exemplary damages, on two grounds; first, because the negligence which is the foundation of the suit, was the negligence of the defendants' servants; and second, because the facts of the case disclose no fraud, malice, violence, cruelty or the like, nor any turpitude or moral wrong.

The defendants are a corporation, and can act in no way but by their officers, agents and servants; and when their officers, agents or servants act within the scope of their authority and employment, it is the act of the corporation, and their negligence is the negligence of the corporation. Angell & Ames on Corp. 386; *Chestnut Hill Turnpike v. Rutter*, 4 S. & R. 6.

If the objection is sustained that exemplary damages cannot be recovered in this case, because the negligence complained of was the negligence of the defendants' agents and servants, such damages can never, under any circumstances, be recovered against a corporation. It would seem, however, to be well settled now, whatever may have been the ancient rule, that *money* corporations, corporations which, like these defendants, are established and conducted in whole or in part for the pecuniary benefit of the members, are liable in actions for torts, in the same way and to the same extent as individuals and natural persons. Angell & Ames on Corp. 302, 385, 386; *Chestnut Hill Turnpike* v. *Rutter*, 4 S. & R. 6; *Hawkins* v. *Steamboat Co.*, 2 Wendell 452; *Yarborough* v. *Bank of England*, 16 East 6; *Whiteman* v. *Railroad*, 2 Har. 514; *Edwards* v. *Union Bank*, 1 Branch 136; *Crawfordville Railroad* v. *Wright*, 5 Ind. (Porter) 252; *Goodspeed* v. *The Bank*, 22 Conn. 53; *State* v. *Railroad*, 3 Tabriska 321.

Corporations may be sued in trespass for the authorized acts of their servants; and if the trespass is committed by their authority, with circumstances of violence and outrage such as would authorize exemplary damages against an individual defendant, it is not easy to discover any ground for a different rule of damages against the corporation, which the law charges with the consequences of the act as the responsible party. If a corporation like this railroad is guilty of an act or default, such as, in the case of an individual, would subject him to exemplary damages, we think the same rule must be applied to the corporation.

According to the general theory of the common law, crimes are prosecuted and punished by the State alone. Individuals are not supposed to have any private interest in the punishment of

public offences. And so, on the other hand, as a general rule the plaintiff in a civil action recovers a mere compensation for his private injury. The object of the suit is to redress the individual wrong which the plaintiff has suffered, and not to repress crime or enforce good morals by inflicting punishment on the defendant; and it has been very lately questioned whether any exception to this rule ought to have been admitted. *Austin* v. *Wilson*, 4 Cush. 273.

It is however extremely well settled that exemplary or vindictive damages may in certain cases be recovered, and this is perhaps in accordance with the legislative policy, which has given pecuniary penalties in numerous instances, to private prosecutors of certain offences. Where the wrong done to the party partakes of a criminal character, though not punishable as an offence against the State, the public may be said to have an interest that the wrong-doer should be prosecuted and brought to justice on a civil suit; and exemplary damages may in such cases encourage prosecutions, where a mere compensation for the private injury would not repay the trouble and expense of the proceeding.

It is objected that in this case exemplary damages cannot be recovered, because the foundation of the action is negligence, and not a willful and malicious act of the defendants. Such damages are awarded for the sake of the public example, or to punish some act or default which has more or less the character of a crime. The right to recover them is not confined to one form of action. They may be recovered in case as well as trespass. *Goodspeed* v. *The Bank*, 22 Conn. 53; *Fleet* v. *Hollenkemp*, 13 B. Monroe 219; *Day* v. *Woodworth*, 13 Howard 363.

If a serious personal injury happens to a passenger, by gross negligence in the management of a railroad train, it is difficult to suggest a case where the public interest would more loudly call for an exemplary verdict. It is a subject in which all the travelling public are deeply interested, for railroads have now a practical monopoly for transporting passengers on all the principal lines of travel; and the disasters which have happened in that mode of travelling have been so great and numerous, that gross

carelessness in the management of railroad trains ought not to be encouraged by any lax administration of the law in such cases.

And gross carelessness in such a case implies a heedless disregard for human life, and for the safety of passengers who intrust themselves to the care of the road; which brings the case very strongly within the rule that the wrong complained of, to warrant exemplary damages, must have something of a criminal character. Gross carelessness, where duty to the public requires the utmost care — and even that is not always sufficient to prevent the most serious calamities — has certainly a strong character of cruelty and moral turpitude. All the general reasons which have been assigned for allowing exemplary damages appear to apply in full force to this case, and we think the instructions of the court on that point were correct.

The case of the *Amiable Nancy*, 3 Wheaton 546, cited by the defendants' counsel, can hardly be regarded as an authority for the general doctrine that the principal is not answerable for exemplary damages when the injury was committed by the agent. That was a suit against the owners for a marine trespass, committed by the officers and crew of a privateer. *Story, J.*, says, in delivering the opinion of the court: " If this were a suit against the original wrong-doers, it might be proper to go yet farther, and visit upon them, in the shape of exemplary damages, the proper punishment which belongs to such lawless misconduct. But it is to be considered that this is to be regarded as a suit against the owners of the privateer, upon whom the law has from motives of policy devolved a responsibility for the conduct of the officers and crew employed by them; and yet, from the nature of the service, they can scarcely ever be able to secure to themselves an adequate indemnity in cases of loss. They are innocent of the demerit of this transaction, having neither directed it nor countenanced it, nor participated in it in the slightest degree. Under such circumstances we are of opinion that they are bound to repair all the real injuries and personal wrongs sustained by the libellants, but they are not bound to the extent of vindictive damages while the government of the country shall choose to

authorize the employment of privateers in its public wars, with the knowledge that such employment cannot be exempt from occasional irregularities and improper conduct; it cannot be the duty of courts of justice to defeat the policy of the government by burthening the service with a responsibility beyond what justice requires; with a responsibility for unliquidated damages, resting in mere discretion, and intended to punish offenders."

It thus appears that the decision of this point in that case was not put on the ground of any general principle of law, but on the peculiar relations subsisting between the owners and the officers and crew of a privateer, and on reasons of public policy connected with the employment of privateers in our public wars. No general doctrine is laid down in the judgment of the court, and the marginal abstract in the reprint of the case confines the rule to suits for marine trespasses against the owners of privateers.

The case of *Whipple* v. *Walpole,* 10 N. H. 130, has been criticised in argument, and certainly carries the doctrine of exemplary damages much beyond the present; for that was an action to recover damages caused by the neglect of a town to repair a highway. The defendants in *Whipple* v. *Walpole* were a municipal corporation; their liability to repair highways is imposed by statute; the damages given by the statute are there denominated special; and if the question is to be regarded as an open one in this State, the argument of the defendants' counsel against the doctrine of that case would deserve serious attention. That case, however, is broadly distinguished from this, and we are not now called on to review it.

*Judgment on the verdict.*