Coit v. Comstock.

There is error in the judgment complained of.

In this opinion the other judges concurred.

ROBERT COIT, ADMINISTRATOR, vs. MARY E. COMSTOCK
AND OTHERS.

A testator made a bequest to his executors upon a trust stated in the will
as follows: "to hold, manage and receive the income thereof until an
act of incorporation can be obtained from the General Assembly of this
state, by the name of the Smith Memorial Home, and with such powers
as may be necessary to carry into full effect the object of this bequest;
and to convey said trust fund with its accumulations to the corporation
so created as soon as it shall be duly organized. The object of this
bequest is the founding of a home for aged, respectable, indigent ·
women who have been residents of the city of New London, under
such regulations as may be prescribed by the act of incorporation."
Held—

1. That the beneficiaries were sufficiently described to enable a court of
equity to carry the bequest into effect.

2. That the expression "who have been residents of New London" did
not mean those who had been so at the time the will took effect by the
death of the testator, but those who, when the selection should be made
under the will, had then been such residents.

3. That the term "Home" sufficiently expressed the idea of a house for
the permanent residence of the beneficiaries.

4. That the bequest was not void on the ground that an act of incorporation
might never be granted and so the fund might remain forever in the
hands of the executors, the testator clearly intending that such an act
should be obtained without unnecessary delay and it being presumable
that the legislature would readily grant it, it being for the public good.

5. But that the bequest vested in interest in the beneficiaries at once,
though in possession only when the corporation was established, liable
to be devested if an act of incorporation was not obtained in a reason-
able time.

Gifts to public charities are favored by the law and courts of chancery will
uphold them if it can possibly be done.

A sum of money was given by the same will to two ecclesiastical societies,
to be invested as a permanent fund, and the annual income, so far as
necessary, to be applied to the keeping of certain burial lots in good
order, and the remainder to the maintenance of religious services in the
societies. Held that the keeping of the burial lots in order was not a
charitable use and that the bequest, therefore, not being protected by
the statute of charitable uses, was void under the statute against
perpetuities.

And held that it was not saved by being given in part for a charitable use. Nor by a provision for the forfeiture of the bequest if the condition as to keeping the burial lots in order was not observed.

[Argued October 17th, 1883—decided January 17th, 1884.]

SUIT for the determination of the validity and legal effect of certain provisions of the will of Seth Smith; brought to the Superior Court in New London County. The plaintiff was administrator with the will annexed, and all the parties interested were made defendants. The will, after giving to Mary Comstock, the niece of the testator, one thousand dollars, which legacy was afterwards revoked by a codicil, proceeded as follows:—

"*Second.* I give, devise and bequeath my house and lot on Granite street, in New London, and all my household furniture, wearing apparel, printed books and household stores, to my beloved wife, Susan T. Smith, to be hers and her heirs forever; and I do further give, devise and bequeath to my said wife, while she continues my widow, the use and improvement during her life of all the rest and residue of my estate, real and personal, not exceeding, however, during any one year or fraction of a year, out of such use and improvement, above the rate of four thousand per annum, and in case such income shall in any year overgo or exceed the sum of four thousand dollars, I direct that the surplus be added to the principal and disposed of as part thereof. In case my said wife marries again, I give and bequeath to her ten thousand dollars, to be hers absolutely, and to be in lieu of dower, and all and every other interest on her part in the residue of my estate shall immediately cease.

"*Third.* Subject to the above disposition in favor of my said wife, I give, devise and bequeath the rest and residue of my estate, real and personal, to such children as may hereafter be born to me.

"*Fourth.* If I die leaving no issue, and if no child or children be born to me after my death, then after the death or remarriage of my said wife, I dispose of the residue of my estate, subject to the dispositions before made, as follows:

VOL. LI.—23

Coit *v.* Comstock.

"I give and bequeath out of said residue five thousand dollars to the ecclesiastical society in New London known as The Second Congregational Society, to be invested by said society in some safe securities and held as a perpetual fund, the annual income of which shall be expended as follows, viz:

"So much thereof as shall be necessary in putting and keeping in good order my burial lot in Cedar Grove Cemetery, and in the proper care and preservation of the graves and monuments in said lot; and the remainder of said annual income shall be expended in the maintenance and support of the religious services in connection with said society. In case said society shall at any time fail to comply with the provisions herein-before named, as to said burial lot, graves and monuments, then the bequest to said society shall become void, and the said sum of five thousand dollars shall fall into, and I do give and bequeath the same to be added to, the fund hereinafter bequeathed to found the Smith Memorial Home, as hereinafter provided.

"Subject to the bequests already made, I do give and bequeath out of said residue one thousand dollars to the ecclesiastical society in the town of East Lyme, Connecticut, connected with the Congregational church there, known as the Stone Church, which shall be invested in some safe security or securities, and held as a perpetual fund, and the annual income thereof shall be applied as follows, viz: So much thereof as shall be necessary in putting and keeping in good order the burial lot, graves and monuments of my father's family, in the burial ground near the said stone church at the date of this will belonging to said society; and the rest of said annual income to the maintenance and support of the religious services in connection with said society; and in case said society shall at any time fail to comply with the provisions above named as to said burial lot, graves and monuments, then this bequest shall become void, and the said one thousand dollars shall fall into, and I do give and bequeath the same to be added to, the fund hereinafter bequeathed to found the Smith Memorial Home, as hereinafter provided, subject to the bequests already made,

" I give, devise and bequeath all the rest and residue of my estate, real and personal, to my executors, or, in case my said wife survives me, to whomsoever upon her decease shall be legally entrusted with completing the settlement of my estate, upon trust, to hold, take care of and manage, and receive the same, and the rents, profits and income thereof, until an act of incorporation can be obtained from the General Assembly of the state of Connecticut, by the name of the Smith Memorial Home; and with such powers as may be necessary and proper to carry into full effect the purposes and objects of this bequest; and to convey, transfer, assign and deliver the said trust fund, with its accumulations, to the corporation created by such act, as soon as such corporation shall be duly organized. The purpose and object of this bequest is the founding a home for aged, respectable indigent women, who have been residents of the city of New London, under such regulations as may be prescribed or provided by such act of incorporation. I direct that the building and real estate necessary for such home shall not cost, out of the fund hereby provided by me, more than twenty thousand dollars. I desire that my executors, or whoever shall be legally my representatives for the execution of this will, when said corporation is formed, to be corporators therein; and also then, and ever after, the persons who shall be pastors, for the time being, of the First and Second Congregational churches in said town of New London; and also, in the first place, such other persons as my said legal representatives, executors, or otherwise, and the said pastors for the time being, shall associate with them; and that when once such corporation has been duly organized, any vacancy in their number, other than of the pastors of said churches, who are *ex officio* members, be filled by the corporation itself, as such vacancy occurs. I suggest that the plan of the Eliza Huntington Memorial Home of Norwich, be adopted in the management of the home hereby provided for, so far as the same shall be applicable."

The complaint set out the will, and alleged that it was executed in December, 1876, and that the testator died in

April, 1878, leaving no issue, and that his widow died in October, 1880. That the will had been duly proved in the probate court, that the plaintiff had been duly appointed administrator with the will annexed, that he had rendered an administration account to the court of probate and that it had been allowed, and that the personal property remaining in his hands was over $150,000. Also that nothing remained to be done except to dispose of the residue of the estate, out of which by the will two legacies of $5,000 and $1,000 were given to the two ecclesiastical societies named in the fourth section of the will and the rest in trust for "The Smith Memorial Home" described in the will. Also that the General Assembly, upon the application of the plaintiff, had, at its May session in the year 1881, granted a charter for the Smith Memorial Home, in accordance with and for the purpose of carrying into effect the provisions of the will, and that the charter had been accepted by the corporators and the corporation organized under it and located in the city of New London. The complaint then alleged that questions had arisen with regard to the validity and legal effect of the bequests to the two ecclesiastical societies and for the establishment of the Smith Memorial Home, and prayed the court to adjudicate between the legatees under the will and Mary E. Comstock as sole heir at law and the executor of the widow and all parties interested in her estate, all of whom were made defendants.

The court found all the allegations of the complaint to be true and reserved the case for the advice of this court.

*J. Halsey* and *A. Brandegee,* for the legatees.

1. The testator clearly intended, subject to the provision for his widow and the two small bequests to the ecclesiastical societies, to found a great public charity, that should be a memorial to his family name, a blessing to the community in which he lived, and a home for the comfort, maintenance and support of aged, indigent and respectable women for all coming time. This plain intent it is the duty of this court to carry into effect by invoking all the powers and in-

strumentalities within the jurisdiction of a court of equity. Some general expressions used in certain earlier decisions of this court, or a misapprehension of their scope, have by learned commentators been thought to indicate in this state a disposition unfriendly to public charities. 2 Redf. on Wills, § 36; Perry on Trusts, § ˙720. Whether there be or not any foundation for these criticisms, or whether there be any lack of uniformity in some of the earlier cases, it is believed that the time has come, and the opportunity, for this court to review, harmonize and authoritatively settle the principles and public policy upon which the foundations of our public charities rest in this state. And it is confidently expected that in the consideration of a question so vital to the good name of a christian state and affecting the happiness of so many unfortunate human beings for all coming time, the court will adopt the spirit of one of the ablest and most philanthropic of its own judges, and hold " that to carry out these charitable testamentary gifts, when they are promotive of important public and benevolent purposes, is in accordance with the enlightened and philanthropic spirit of the age, and that with such a spirit the jurisprudence of the country should keep pace." CHURCH, C. J., in *Am. Bible So.* v. *Wetmore*, 17 Conn., 189.

2. As to the jurisdiction of courts of equity over charitable trusts. It was for a long time supposed to be drawn solely from the statute familiarly known as the 43d of Elizabeth, and to be limited by the provisions of that statute, and in this country by the statutes analogous thereto. This error emanated from a dictum of Ld. LOUGHBOROUGH in *Attorney-General* v. *Bowyer*, 3 Ves., 714, and was followed and strengthened by the erroneous decision of the Supreme Court of the United States in *Baptist Association* v. *Hart's Exrs.*, 4 Wheat., 5. This decision, predicated upon what was then known of the earlier practice of the English chancery courts, was adopted by many of the American courts and among them our own, and for a long time it restricted the exercise of equitable jurisdiction over a subject which seems from its nature to be

peculiarly within the province of a court of equity. The discovery and publication by the commissioners of public records in 1827, 1830 and 1832, of the early English judicial records, however, disclosed the fact that courts of equity had exercised full jurisdiction in this class of cases from the earliest times and long prior to the statute of Elizabeth. Since the publication of these records the whole question has been reviewed, and in a most masterly manner, by Chancellor WILLIAMS in *Burr's Exrs.* v. *Smith,* 7 Verm., 306. This decision was followed by the Supreme Court of the United States in the famous *Girard Will Case,* 2 How., 127, 155 and 196, reversing its decision in *Baptist Association* v. *Hart's Exrs.* and affirmed in *Ould* v. *Washington Hospital,* 95 U. S. R., 303, "which later and better opinions in favor of an original and necessary jurisdiction in courts of equity for charitable purposes" were adopted by this court in *White* v. *Howard,* 38 Conn., 362, 373. So that it may now be considered as settled, that courts of equity have original, inherent and plenary jurisdiction over public charities, and can protect, maintain and enforce them by virtue of their own powers and modes of procedure, irrespective of the statute of Elizabeth, or of local statutes of charitable uses, unless restricted expressly thereby. Perry on Trusts, § 649; 2 Story Eq. Jur., § 1154.

3. Whenever it is once ascertained that the intent of the testator is to found a *public charity,* courts of equity will exhaust all the powers at their command to give effect to that intention and prevent the charity from failing. *Williams* v. *Williams,* 8 N. York, 525; *Attorney Gen.* v. *Shore,* 11 Sim., 592; *Am. Bible Society* v. *Wetmore,* 17 Conn., 188; *White* v. *Howard,* 38 id., 366; *Sanderson* v. *White,* 18 Pick., 333; 1 Story Eq. Jur., § 1165; 1 Jarman on Wills, 207; Perry on Trusts, § 687.

4. The intention of the testator and the power and the disposition of the court being thus established, the sole question remaining is, whether there is in the case now before the court such uncertainty, either in the method of disposition of this fund or in the objects of the testator's

bounty, that a court of equity cannot, within the principles by which it is guided, possibly carry it into effect. It is of the very nature of public charities that they should be uncertain. They are intended to reach far into the future. They confer their benefits largely upon classes of persons most of whom are unborn when the trust is created, and whose wants and characteristics are not susceptible of exact definition. They concern generally the aged, the indigent, the sick and the unfortunate, and these terms easily understood and having a customary and popular meaning, are made no plainer by the use of synonyms. Our statute of charitable uses could find no fitter phrase to express its own meaning than the general terms of "ministry of the gospel and relief of the poor." The famous statute of Elizabeth, in enumerating the pious and godly uses to which it applies, employs no more definite description than such as the "relief of the aged," "the maintainence of sick and disabled soldiers and marines," "the education and preferment of orphans," "the marriage of poor maids," "the supportation of tradesmen and handicraftsmen," "and of persons decayed," "the redemption of prisoners and captives." "A public charity begins where uncertainty in the recipient begins." *Fontain* v. *Ravenel*, 17 How., 384. See also *White* v. *Howard*, 38 Conn., 367; *Griffiths* v. *The State*, 2 Del. Ch., 421; 1 Story Eq. Jur., § 1154; Perry on Trusts, § 710. Where a charity is created for a definite class of beneficiaries and a mode is provided by which the particular beneficiaries can be ultimately selected, uncertainty is reduced to certainty, upon the principle of "*id certum est quod certum reddi potest*." *Brewster* v. *McCall's Devisees*, 15 Conn., 292; *Bull* v. *Bull*, 8 id., 50; *Holmes* v. *Mead*, 52 N. York, 332; Perry on Trusts, § 732. Where the intent of the donor to create a public charity is clear, and the class of persons to be its beneficiaries is definite, the charity will not be allowed to fail because of some defect in the method adopted by the testator to effect it. 1 Story Eq. Jur., § 1167; Perry on Trusts, § 722. In the case at bar the class of beneficiaries is as definite as can be well described. The indi-

*Coit v. Comstock.*

viduals to be selected from the class are to be determined by the corporation to be created, which is to be the ultimate trustee. From the nature of the case no rule could be framed in advance by the testator himself which would operate for all time in a judicious selection out of the many applicants for his bounty. But he designated a mode by which a selection might be made as often as the cases should recur. He referred the matter to the legislature to charter a corporation having perpetual succession, with appropriate by-laws and regulations, and his will was that it should be modelled after the Eliza Huntington Memorial Home, which was in beneficent operation in a neighboring city, and with whose plan and scheme of administration he was familiar. The rules and regulations of the corporation thus created will be held by a court of equity equivalent to an appointment by the testator himself. This doctrine is expressly recognized in the case of *White* v. *Fisk*, 22 Conn., 31, which is the case in Connecticut most relied upon by the contestants, and which has given rise to so much criticism elsewhere. The bequest, which was a private trust and not for a public charity, was held invalid for the sole reason that " no rule of determination, selection or appointment was furnished by the will and no positive or discretionary powers of determination bestowed upon the trustees." But the court significantly adds :—" This legacy is not given to any college or institution, nor to any association, corporate or voluntary, by which the charity can be dispensed. If the bequest indicated in this will had been made to a college or institute or other body which had or might have a supervision or interest in the general object of the charity and rules for its management, it would have presented a different case." And the court goes on to say :—" There is a class of cases, the authority of which we recognize, where the individual beneficiaries are left uncertain, but included under a definite class, and yet the bequest has been sustained. But these are cases where the gift has been to some corporate or voluntary association, whose business and duty it becomes to dispense the charity." The exception

thus expressly recognized by the court as authoritative, is precisely the case at bar. Language could not better describe it. A review of the cases in Connecticut will show that the unfriendly criticism before alluded to is wholly without foundation and that this court has, from the earliest times and uniformly, upheld public charities whenever there was a possibility of so doing. *Greene* v. *Dennis*, 6 Conn., 293 ; *Bull* v. *Bull*, 8 id., 50 ; *Langdon* v. *Plymouth Cong. Society*, 12 id., 126 ; *Brewster* v. *McCall's Devisees*, 15 id., 274 ; *Am. Bible Society* v. *Wetmore*, 17 id., 197 ; *Treat's Appeal from Probate*, 30 id., 116 ; *Proprietors of White School House* v. *Post*, 31 id., 258 ; *White* v. *Howard*, 38 id., 354 ; *Jocelyn* v. *Nott*, 44 id., 55 ; *Adye* v. *Smith*, id., 61 ; *Hughes* v. *Daly*, 49 id., 34. It is admitted that the current of authority in New York is in another direction. It is not proposed to cite or criticise those cases. They can have but little bearing upon the questions in controversy here, because upon examination it will be found that they are controlled by two peculiar statutes of that state, one of which abolishes all uses and trusts excepting certain which are enumerated specially, in which enumeration public charities are not included, and the other provides that any devise to a corporation which is not authorized by statute to receive it is void. *Holmes* v. *Mead*, 52 N. York, 332, 340. In Massachusetts, "whose system of jurisprudence in relation to trusts," is said by LOOMIS, J., in *Adye* v. *Smith*, 44 Conn., 69, "to be similar to our own," courts have from the earliest times gone to the extent of their powers in upholding charities. *Washburn* v. *Sewall*, 9 Met., 280 ; *Odell* v. *Odell*, 10 Allen, 1 ; *Saltonstall* v. *Sanders*, 11 id., 453 ; *Jackson* v. *Phillips*, 14 id., 539 ; *Rotch* v. *Emerson*, 105 Mass., 431 ; *Old South Society* v. *Crocker*, 119 id., 18 ; *Fellows* v. *Miner*, id., 541 ; *Sohier* v. *Burr*, 127 id., 221. It is unnecessary to cite authorities from the other state courts ; they are very numerous and occupy a large space in their reports. They are nearly uniformly in the same direction with the principles above laid down, and may be found collected in the voluminous notes of Jarman, Redfield, and Perry on the

subject of charities. To the same effect are the cases in the United States courts. *Jones* v. *Habersham*, 3 Wood C. C., 470; *Ould* v. *Washington Hospital*, 95 U. S. R., 303; *Inglis* v. *Sailors' Snug Harbor*, 3 Peters, 99; *Perin* v. *Carey*, 24 How., 465; *Cresson* v. *Cresson*, 6 Am. Law Register, 42. The doctrine of *cy pres* was adopted in the earlier English chancery cases to carry into effect a general charitable intent where the particular charity was void as against public policy. It grew out of the maxim that the king was "*parens patriæ*" and by virtue of his prerogative could authorize the Lord Chancellor as keeper of his seal and of his conscience to carry out " as near as " may be the pious purpose of the donor. This power of prerogative is inapplicable to our situation and has never been adopted in this country, and it was expressly repudiated in this state in *White* v. *Fisk*, before referred to. The power itself, aside from the theory from which it emanated, is founded in the highest equity. It is more consonant to equity that an estate upon which the donor has stamped a charitable intent should go to some like charity, though the particular charity fail, than that it should go to the heir whom he has unmistakably disinherited. By the American courts, while the doctrine as a prerogative power has been discarded, yet it has been generally acted upon as a rule of construction by which a court of equity, as keeper of the conscience of the state, will bend all its powers towards ascertaining and enforcing the charitable intent of the donor against the heir whom he has disinherited. In *Jackson* v. *Phillips*, 14 Allen, 574, GRAY, C. J., in speaking of this power says:—" The application of the *cy pres* doctrine in the exercise of general equity jurisdiction, stands upon very different ground than when exercised as a prerogative power. It is favored in this country as well as in England." See also Perry on Trusts, §§ 727, 728. The same terms in which this charity is defined were before this court in the case of *Wait* v. *Huntington*, 40 Conn., 9, in which a question of uncertainty was raised, though not the question of uncertainty now at issue. It is hardly to be supposed, in view of the importance of

that case and the distinguished counsel who appeared, that if any uncertainty existed as to the validity of that charity, it should not have occurred to or been suggested by either court or counsel. There is no uncertainty in regard to the persons by whom the act of incorporation is to be procured nor as to the character and provisions of the charter to be obtained. Even if any uncertainty in the persons to procure the charter existed, that would not cause the charity to fail. 1 Story Eq. Jur., § 1167; *Sanderson* v. *White*, 18 Pick., 336.

5. The trusts to the ecclesiastical societies are both valid. "It is now settled that a trust to build, maintain, and keep in repair tombs, vaults and burial grounds of the donor or their families are so far charitable that they can be carried into effect." Perry on Trusts, § 706; *Dexter* v. *Gardner*, 7 Allen, 247; *Swasey* v. *Am. Bible Soc.*, 57 Maine, 527; *Jones* v. *Habersham*, 3 Wood C. C., 471. The trust to the ecclesiastical society in this case was given to take effect after the death of his widow. She died October, 1880. In March, 1879, the legislature by statute authorized ecclesiastical societies "to receive and hold in trust donations, the income of which is to be used for the care of private burial lots." Acts of 1879, p. 462. The bequests to these societies for the maintenance of religious services is a good public charity. If the condition to devote so much of the income as may be necessary for the care of the burial lots is void, the bequest to the society would still be valid divested of the condition.

6. The legacies are not void as obnoxious to the law against perpetuities. The doctrine of perpetuities is founded upon principles of public policy. It had no root in the early common law. It was a gradual growth from a class of decisions of the independent judges of England which has aptly been termed "judicial legislation." The disposition of the lords of the manor was to perpetuate their estates in their own blood. The policy of the judges was to unlock the fetters by which the landed gentry sought to shackle free alienation of lands long after they had gone to their graves. This doctrine however, founded on a policy which concerned real

estate, was applied mainly if not solely to devises and other conveyances of lands. All the cases in the books are of that description. *Dodge* v. *Williams*, 46 Wis., 70. It never had any application to public charities. Public charity is from its very nature to be perpetual. It is for the relief of the poor, and we have the word of Him whose gospel is founded on charity, that "the poor ye have always with you." "A gift to a public charity is not void although in some form it creates a perpetuity. Perry on Trusts, § 687. "Another particular in which charitable gifts are favored by law is that such gifts are not obnoxious to the common rule against perpetuities." Id., § 736. "Even the stern rule against perpetuities is relaxed for their benefit." *Ould* v. *Washington Hospital*, 95 U. S. R., 313. "There was never any objection to the creation of perpetuities in regard to charitable trusts, it being of the essence of charity to make it perpetual." 2 Red. on Wills, 546, § 70. And to the same effect are *Corbyn* v. *French*, 4 Ves., 423; *Williams* v. *Williams*, 8 N. York, 525; *Holmes* v. *Mead*, 52 id., 332; *Perin* v. *Cary*, 24 How., 465; *Yard's Appeal*, 64 Penn., St., 95; *Dexter* v. *Gardner*, 7 Allen, 243; *Odell* v. *Odell*, 10 id., 1. The bequest to trustees, in the first instance, to hold until an act of incorporation can be obtained, does not offend against the statute of perpetuities. *Ould* v. *Washington Hospital*, 95 U. S. R., 313; *Jones* v. *Habersham*, 3 Wood C. C., 479. The question is not now before this court as a court of law to determine the legal character of the estate in the hands of the first donees. But it is before a court of equity, clothed with full power to coerce the execution of this charity according to the principles upon which equity proceeds in such cases. *Greene* v. *Dennis*, 6 Conn., 298; *Inglis* v. *Sailors' Snug Harbor*, 3 Pet., 142. In the last case the court say: "Here is clearly contemplated a future vesting to depend on a capacity to take, to be created by legislative act. If the passing of that legislative act had been restricted by the will in point of time to the lives of the individuals filling these offices at the death of the testator, on what possible ground could the devise be impeached? Does then the law invalidate the devise for

want of such restriction or some equivalent to it? It is perfectly clear that the law of England does not and never did, as relates to charities. In *Odell* v. *Odell*, 10 Allen, 7, GRAY, J., says : " But a gift may be made in trust for a charity not existing at the date of the gift, and the beginning of whose existence is uncertain, or which is to take effect upon a contingency which may possibly not happen within a life or lives in being and twenty-one years thereafter." In *Burrill* v. *Boardman*, 43 N. York, 259, a bequest to trustees for the establishment of a hospital, and they to apply to the legislature for an act of incorporation, was held not to violate the statute of perpetuities, provided the incorporation was actually granted within two lives. In *Ould* v. *Washington Hospital*, 95 U. S. R., 303, the devise was to two trustees to hold for any institution that might thereafter be incorporated by act of congress for a hospital for foundlings. It was assailed by distinguished counsel for uncertainty and as repugnant to the statute of perpetuities. Mr. Justice SWAYNE, in giving the opinion, says (p. 312) : " This provision in the will was a conditional limitation of the estate vested in the trustees, and nothing more. Their conveyance they made necessary to pass the title. The duty with which they were charged was an executory trust. When such uses are consummated, and no longer *in fieri*, the law of perpetuity has no application." To the same effect is *Jones* v. *Habersham*, 3 Wood C. C., 470. To hold that this charity shall fail because of the uncertainty whether an act of incorporation " can be " obtained within the lives of the original trustees and twenty-one years thereafter, is to impute to the legislature of a christian commonwealth that which is refuted by every instinct of its people and every line of its history. But it is not necessary to resort to presumptions. The legislature has granted an act of incorporation. The temporary trustees did accept the executory trust. They applied for a charter and it was granted. Uncertainty, if there was any, has been reduced to certainty. The source and fountain of all authority in this state has declared the funds bequeathed by the testator vested in the corporation which it has created and

named according to the will of its founder. This act repeals *pro tanto* the statute of perpetuities, if it ever had any application to the case. " The legislature can give *ex post facto* a capacity to take a charity where there was no such capacity existing at the time of the devise over." *Inglis* v. *Sailors' Snug Harbor*, 3 Pet., 99.

*H. C. Robinson*, with whom was *D. Chadwick*, for the heirs of Susan T. Smith.

1. The gift to the Smith Memorial Home is void because of uncertainty in the object of bounty and of indefinite description of the beneficiaries. The language used is this : " The object of this bequest is the founding a home for aged, respectable, indigent women, who have been residents of the city of New London, under such regulations as may be prescribed or provided by such act of incorporation. * * I suggest that the plans of the Eliza Huntington Memorial Home of Norwich be adopted in the management hereby provided for, so far as the same shall be applicable." In these words, and in these only, are we to find the beneficiaries whom the testator has in this instrument selected as the objects of his bounty. We submit that they do not definitely describe anybody. It is not necessary for us to invite the attention of the court to the immense question of charitable uses which lies behind our controversy. It is enough to say that after all the discussions in text-books and courts, from the bench of the humblest probate judge to the House of Lords, and the Supreme Courts of the several states and of the United States, covering a period of several centuries, and involving the character of English and other chancery courts, of the common law of uses, and of the statutes 43d Elizabeth, of mortmain, and of the doctrine of *cy pres*, the courts are still far from being at one ; and we find two diverse theories, each supported by most respectable authorities, open to us as we come to the precise question in hand, whether this instrument has pointed out to us definite and certain beneficiaries. One theory drives the courts into a struggle in the dark to support by guess the ill-expressed notions of testamentary

instruments; the other holding in wholesome respect the natural law of descent, consents to no diversions from it unless the diversion is expressed with reasonable certainty. One theory we may call the English theory, the other the Connecticut theory. This latter theory is stated by the court, Judge LOOMIS giving the opinion, in *Adye* v. *Smith*, 44 Conn., 70, in the following words: "Our law is more strict than the English law in this, that it requires certainty in the persons to be benefited, or at least a certain and definite class of persons, with an ascertained mode of selecting them. But the law of England in those cases where the statute applies or where the doctrine of *cy pres* may be involved, does not require any such certainty. In *White* v. *Fisk*, 22 Conn., 31, the doctrine of *cy pres* was repudiated as founded originally on kingly prerogative and as inconsistent with the provisions of our statute." The opinion then quotes approvingly the language of Judge CHURCH in *White* v. *Fisk*: "To carry out this provision of the law, the intentions of the donor must be certain, as well as the objects of his charity reasonably definite, and the charity confined to the very use to which it was destined." And in that case the court very clearly and wisely says, (p. 52): "Our statutes of descent and distribution have established rules for the distribution of estates, founded upon what are supposed to be the ordinary principles and impulses of natural affection and of equity; and, in the absence of other evidence, these may well be followed, as the best exponents of intention. Every man has a right, by his last will and testament, to change these laws in his own case, and make a law for himself, if he will; but to do this effectually, he must not only observe prescribed formalities with exactness, but he must speak in a manner leaving no reasonable doubt of his purpose; and if he does not do this, the general and prescribed laws should be permitted to have their just and equitable effect." This rule of interpretation, affirmed so forcibly in 1852, and reaffirmed so recently as 1876, in *Adye* v. *Smith*, and again in 1881, in *Hughes* v. *Daly*, 49 Conn., 34, would seem to have so thorough an endorsement as to repel at the threshold any

endeavor in Connecticut to set it aside. It is fully recognized in the state of New York by a long array of decisions, in a well considered case in Indiana, also in Maryland, Michigan, Missouri, North Carolina, Virginia, West Virginia, Wisconsin, in some modern English cases, and in the United States Supreme Court at certain periods in its history. With such authorities before us can it be doubted that our own court will stand by its own decisions expressing views so largely adopted by other tribunals, although these views have been treated with criticism by certain text writers, and are not in harmony with the views of some other courts?

We submit that this gift is uncertain and its objects indefinite in several particulars. 1st. The purpose is to found a "Home." This word, for which some languages have no equivalent, has no definite legal significance. If our own court, in *Hughes* v. *Daly*, classifies among the indefinites the word "reformatory," which is altogether more narrow and technical than "home," can we for a moment hesitate to say that this word must be delivered over to the same class? In analyzing the legal effect of the word "reformatory," the court, by PARDEE, J., says, (p. 35:) "The word 'reformatory' used as a noun is of too wide and uncertain signification to support the bequest. It includes all institutions and places in which efforts are made either to cultivate the intellect, instruct the conscience, or improve the conduct." 2d. The adjective "aged" is an equivocal word. When does a person begin to be aged. 3d. The adjective "respectable" is of peculiar uncertainty. By what standard? Respected by whom? This word cannot be helped out by the discrimination of a trustee, as is well said in *Adye* v. *Smith*, (p. 71:) "The finding shows that the trustee has made a statement of the purposes for which he intended to dispose of said funds, and if such purposes had been specified in the will it would have been valid. But no action or statement on the part of the trustee can avail in the least to cure a radical defect in the will. It is the will of the testatrix, not that of the trustee, which is to stand or fall, and to use the language of Sir William Grant,

in *Morice* v. *Bishop of Durham*, 'The question is not whether the trustee may apply the estate upon purposes strictly charitable, but whether he is bound so to apply it.'"

4th. "Who have been residents of the city of New London." This instrument speaks from the death of the testator. Are its objects to be limited to such aged, respectable, and indigent women as at that time "have been" residents of New London. If so its term of benevolence must soon end, for the reservoir to feed such a description must, by the inflexible laws of mortality, be exhausted in a generation. If this is not the meaning, what is? To what period is the "have been" to relate, and does it exclude the "now are"? And what kind of "residents" are they? Are they residents in the legal or the popular sense? Let us cite here a few analogous cases, and ask with regard to each one,—is its trust less definite than the one at bar? Beginning with the central case of *White* v. *Fisk*, is our description more precise than Judge Hitchcock's "indigent pious young men preparing for the ministry in New Haven?" And so in a very able opinion delivered by Judge BUSKIRK in *Grimes* v. *Harmon*, 35 Ind., 246, the Supreme Court of Indiana classifies with the indefinites the description—"To the orthodox Protestant clergymen of D., to be expended in the education of colored children." And so in *Wilderman* v. *Baltimore*, 8 Md., 551, this—"For the relief and support of the indigent and necessitous poor persons who may from time to time reside within the limits of the twelfth ward." So in *Needles* v. *Martin*, 33 Md., 609—"For the education of free colored persons in the city of Baltimore." So in *Trippe* v. *Frazier*, 4 Har. & J., 446—"To the real, distressed private poor of T. county." So in *Dashiell* v. *Attorney-General*, 5 Har. & J., 392, and 6 id., 1—"To be applied toward feeding and clothing and educating the poor children belonging to the congregation of St. Peter's Protestant Episcopal Church in the city of Baltimore," and "for the poor children of S. county." So in *Attorney-General* v. *Soule*, 28 Mich., 153—"For the establishment of a school at M., for the education of children." So in *Schmucker's*

VOL. LI—24

*Estate* v. *Reel*, 61 Misso., 592 — "For a purpose explained to him" (the executor) "for specific charitable purpose he understands," for charity "in his discretion," "for masses." So in *Owens* v. *Missionary Soc.*, 14 N. York, 380 — A residuary gift "to the Methodist American Missionary Society appointed to preach the gospel to the poor." So in *Beekman* v. *Bonsor*, 23 N. York, 298 — "To such charitable societies for relieving the indigent and comfortless as the executors may select." In *Levy* v. *Levy*, 33 N. York, 97 — "For an agricultural school for orphan children of warrant officers of the United States navy." In *Goddard* v. *Pomeroy*, 36 Barb., 546 — "To be employed in preaching the gospel in the destitute regions of the west." In *Miller* v. *Atkinson*, 63 N. Car., 537 — "For the poor orphans of North Carolina, to be by the trustees selected." In *Hester* v. *Hester*, 2 Ired. Eq., 330 — "For some promising young man of good talents and of the Baptist order." In *Bridges* v. *Pleasants*, 4 Ired. Eq., 26 — "To foreign missions and to the poor saints, to be applied as my executors may think the proper objects according to the Scriptures, the greater part to missionary purposes." In *Gallego's Exrs.* v. *Attorney-General*, 3 Leigh, 450 — "For distribution among needy poor and respectable widows." In *Carpenter* v. *Miller's Exrs.*, 3 W. Virg., 174 — "For the propagation of the gospel in foreign lands." In *Heiss* v. *Murphy*, 40 Wisc., 276 — "For the benefit of Roman Catholic orphans." In *Wheeler* v. *Smith*, 9 How., 55 — "To some disposition thereof which my executors may consider as promising most to benefit the town and trade of A., in such manner as appears to them to yield the greatest good." In *Fontain* v. *Ravenel*, 17 How., 369 — "A gift for distribution among such charitable institutions in Pennsylvania and South Carolina as executors may deem most beneficial to mankind and "so that part of the colored population in each of the said states shall partake of the benefit thereof." And in *Ayers* v. *Methodist Church*, &c., 3 Sandf., 351 — "To the support of aged persons."

Nor have we any way pointed out of making clear the uncertainties of the will. The reference to the Eliza Hunt-

ington Memorial Home has no such force. The managers of this affair may go there for light as to " management," but not for purposes. The character of this gift is not to be affected in any way by the Norwich benefaction, but its operation is qualified by it. Nor is there any certainty added by the reference to a proposed corporation. The corporation is to " carry into full effect the purposes and objects of this bequest," which purposes and objects are immediately after declared. There is no attempt to give to anybody power to make the purposes of the gift more certain or definite, but to " carry them into full effect." And if a testator were to attempt to direct a legislature of a state to make definite the indefiniteness of his will, it would be an impertinence to the sovereignty. The legislature is not convened for that purpose, but to make laws. The constitution has defined its powers, and the function of making intelligible the equivocal phrases of wills and grants is not included.

2. The gift is void as obnoxious to the statute and common law rules against perpetuities. Here again we come into a field of legal controversy and judicial conflict. The decisions applicable to the case before us cannot be perfectly harmonized. Here, too, we have a Connecticut view laid down by a very recent case, which is in harmony with the best decisions of many courts of the highest character and learning, but which is not altogether harmonious with a view taken by some text writers, and by the United States Supreme Court in its latest announcements, which are at variance with its earlier views. We submit that the gift to the Smith Memorial Home is an executory gift of the whole residue, and that the gift to trustees is a special trust which holds the estate in suspense until the taking by the beneficiary of the executory devise. This is the view taken of gifts of this class by nearly all the courts in this country, including our own, and in England, excepting that the Supreme Court at Washington has recently held that in cases somewhat analogous, though not precisely so, as we shall endeavor to show, the gift is held to be to the trustees,

with a conditional limitation put into the trust itself, and the gift over of the estate is attributed to the trustees and not at all to the will. A sounder view than that taken at Washington would seem to be, that the gift is by the testator by way of executory devise, the devolution by trustees being necessary only to complete the legal title, and the equity of the estate, its real ownership, is held meantime (until the condition is performed) in suspense. If a gift is made to vest at once, and all limitations put upon it by the testator are mere directions imposed by the testator upon the donees, of course there is no violation of the laws against perpetuity, because the estate is given to persons in being and to nobody else. But although the highest Federal judicial court, in its recent decisions (*Ould* v. *Washington Hospital,* 95 U. S. R., 303; *Russell* v. *Allen,* 107 id., 163; *Jones* v. *Habersham,* id., 174,) and although some of the states which lean strongly toward the English doctrine of *cy pres* seem to hold these gifts to be immediate, and to charge the title of the final beneficiary wholly to the holder of the legal estate under the will, we submit that such a view of the gift is unsound in principle, and wholly in conflict with our Connecticut decisions. We treat the estate proper as held in suspense, the legal title meantime being in such trustees as the testator in his will, or the law in his silence, has designated, and to vest as an executory gift at the appointed time. And this is the precise point in the argument where the two currents of thought diverge; if there is no postponed gift there is no sin against the statute; if the gift is executory the statute makes it void.

The executory devise then to the Smith Memorial Home, does not vest in any persons in being at the time of making the will, or in the issue or descendants of such persons. Judge WALLACE in *Waldo* v. *Cummings,* 45 Ill., 421, says: —"A perpetuity is defined to be a limitation taking the subject thereof out of commerce for a longer period," etc. Gilbert defines it—"Such a limitation of property as renders it inalienable beyond the period," etc. Gilbert on Uses by Sugden, 260. Lewis's definition is: "A future limitation

executory or by way of remainder, and either of real or
personal property, which is not to vest or will not necessarily
vest within the period, etc., and which is not destructible by
the persons for the time being entitled to the property
subject," etc.   Lewis on Perpetuities, 164.   It must be
admitted by all parties to the discussion that if the vesting
of an estate may be too far away, that fact has precisely the
same legal effect as if it cannot vest before that time.   And
if the event actually happens within a proper time it is of
no legal account.   Perry on Trusts, § 381, n. 2, and cita-
tions.   All authorities agree in this, and it is frankly admit-
ted by the Supreme Court of the United States.   "If the
fatal period may elapse before what is to be done can be
done, the consequence is the same as if such must inevitably
be the result.   Possibility and uncertainty have the same
effect."   *Ould* v. *Washington Hospital,* 95 U. S. R., 313.   It
will not be claimed that an immediate absolute gift to a
charitable use is open to the objection that it offends the
statute against perpetuities, although by its being it provides
for successors who shall come to its possession at a period
later than the prohibitions of the statute.   This much is
conceded by all the courts to the nature of such uses.   But
when the gift is contingent or executory the objection is held
to be sound because of the dangerous character of the inter-
mediate holding of the property.   The courts of New York
have often passed upon this question, and always with great
clearness and positiveness; particularly in *Rose* v. *Rose,*
4 Abb., 108; *Leonard* v. *Burr,* 18 N. York, 107; *Phelps's
Exr.* v. *Pond,* 23 id., 69; *Levy* v. *Levy,* 33 id., 97; and
exhaustively in *Bascom* v. *Albertson,* 34 N. York, 584.   The
opinion of the court in the last case is absolutely fatal to
the possibility of maintaining the gift in question.   The
English courts all hold that if there is a gift to an indi-
vidual and then over to a charity, which gift over may not
happen within the prescribed limit, the charity is void.
*Company of Pewterers* v. *Christ's Hosp.,* 1 Vern., 161; *Com-
missioners* v. *Clifford,* 1 Dr. & War., 254; *Att'y-Gen.* v. *Gill,*
2 P. Wms., 369; *Cherry* v. *Mott,* 1 Mylne & Cr., 123.   But,

inspired by the doctrine of *cy pres* and their parental control of all charities, they also hold that a gift once made to charity is a gift to charity, and if afterwards it is given over to another charity, it is still a gift to charity, and therefore the same gift. And in nearly all the cases which have been cited by Judge GRAY in his opinions delivered at Boston and at Washington, the court will find a forthwith gift to charity, and then a gift over to charity. And when the High Court of Chancery overruled the Master of the Rolls, Sir John Romilly, in the latest English case, *Chamberlayne* .v. *Brockett*, L. R., 8 Ch. App., 206, the learned judges differed only in this, that the Master of the Rolls found that there was no immediate gift to charity in the language of the will, and the appellate tribunal found that there was one. And in all the English cases that we have met which reach a different result from our own court in this matter, the gifts provide for an immediate charitable use of the estate to be made by the trustees. And this is true, too, of most of the American cases which will be cited against us. Of course this is altogether different from a gift to trustees to hold the estate and let its income accumulate, with no power to use it in charity, but by-and-by to hand it over to somebody else to use in charity. There is no charitable use of the estate raised while its legal title is in the trustees. The charitable use begins when their connection with it ends. Not so at all in *Inglis* v. *Sailors' Snug Harbor*, *Mc-Donough* v. *Murdock*, and *Jones* v. *Habersham*, in all of which cases we find the charitable use beginning at once.

The gift in question vests in the trustees only a legal tenure, with a right to accumulate, which accumulation itself for an indefinite period is tantamount to a perpetuity. 2 Spencer's Eq., 181, 182; Lewin on Trusts (3d ed.), 111, and cases cited. Such a gift as the gift before us creates an "inalienable" estate in the trustees for a term which is perpetual within the sense of our law. It takes it "out of commerce" without giving it to charity. And hence our own very recent case of *Jocelyn* v. *Nott*, 44 Conn., 55, is founded upon the best of reasons. In that case we have a

precise analogy to the one at bar. The trustees have the same power under both wills. They are to hold the estate and let it accumulate. The executory devise there, like the one at bar, is to take effect at an indefinite time. And the learned court in that case was obliged by the force of the wholesome law against perpetuities to nullify the charitable intentions of the testator. The property was to vest when a religious society should comply with certain conditions. The learned court, by CARPENTER, J., says (p. 58):—
"The property intended to be devised therefore, may, according to the terms of the will, vest in a short time, and it may never vest. This provision of the will therefore directly contravenes our statute against perpetuities. *  *
As this devise may in fact never take effect, we must hold that it is wholly void. This will also contravenes the well settled rule of the common law, that a limitation by way of executory devise, which may not take effect within the term of a life or lives in being at the death of the testator and twenty-one years afterwards, adding in the case of a child unborn about nine months more, is void as too remote and tending to create a perpetuity. 'This rule,' says the Supreme Court of Massachusetts, in *Fosdick* v. *Fosdick*, 6 Allen, 41, 'is imperative and perfectly well established. *  *  * But the limitation, in order to be valid, must be so made that the estate, or whatever is devised or bequeathed, not only may, but must necessarily, vest within the prescribed period. If by any possibility the vesting may be postponed beyond this period, the limitation over will be void.' The same principle applies to estates which may not vest within the period prescribed by our statute. The fact that this may be regarded as a charitable devise does not exempt it from the operation of the rule. The common law rule and our own statute are without exception. All devises or grants, whether for charitable uses or otherwise, must vest, if they vest at all, within the time limited. The devise in the present case is vested only in the trustees, and no interest whatever has as yet vested in the party intended to be benefited; and, as such an interest

may never vest, the devise tends to create a perpetuity in the trustees, and vests in them a property which is, and for all time to come may remain, inalienable. This the law will not allow." Is it not too much for the advocates of this charity to ask that our highest court overrule its own decision so soon?

3. The gifts for the care of the testator's burial lot at Cedar Grove Cemetery, and of the burial lot, graves and monuments of his father's family in the burial ground near the stone church at East Lyme, are void. 1st. Because the object stated, which is not a charitable one, is too indefinite. 2d. Because the donee of the legal estate is not incorporated for the purposes raised by the bequest. 3d. Because it is obnoxious to the statute against perpetuities. See the cases cited above. Also *Bolles* v. *Smith*, 39 Conn., 217; *Doe* v. *Pitcher*, 3 Moore & S., 407; *Fowler* v. *Fowler*, 28 Jur., 648; *Fisk* v. *Attorney-General*, L. R., 4 Eq., 521; *Willis* v. *Brown*, 2 Jur., 987; *In re Birkett*, 9 Ch. Div., 576; *In re Williams*, 5 id., 735; *Rickard* v. *Robson*, 31 Beav., 244; *Neo* v. *Neo*, L. R., 6 P. C., 381; *Hoare* v. *Osborne*, L. R., 1 Eq., 585; *McLeod* v. *Dell*, 9 Florida, 427. Nor do the several statutes passed since the death of the testator enlarging the powers of ecclesiastical societies affect this will. They do not pretend to be retrospective; and if they did, they would be unconstitutional as affecting the obligation of a contract and as attacking vested rights.

*A. C. Lippitt*, for Mary E. Comstock.

PARK, C. J. The principal question in this case grows out of a devise and bequest in the will of the late Seth Smith, of New London, which is as follows: [Given in full in the statement of the case, *ante* p. 353.]

Two questions are presented for the consideration and determination of this court regarding this bequest.

1st. Are the beneficiaries described sufficiently to enable a court of chancery to carry it into effect?

2d. Is it obnoxious to our statute against perpetuities?

Coit v. Comstock.

The books are full of cases regarding the first question, wherein charitable uses have been discussed for centuries, by all grades of courts, from the lowest to those of last resort in England and in this country, and it would be unprofitable and useless to consider more than a few of them, for conflicting opinions abound, so much so that we must come at last to our own adjudications upon the subject, and perhaps to some of those of our sister states, for aid in arriving at a decision of the question.

The intent of the testator to create a public charity for the benefit of the aged, respectable and indigent women of the city of New London, is fully and clearly expressed. There is no mistaking his object and purpose; and his right to dispose of his property in the manner indicated cannot be questioned. Indeed it is said that gifts to public charity are highly favored by the law, and courts of chancery will uphold them if it can possibly be done. " This is a charity, which a court of equity is bound to uphold if practicable," said Judge FOSTER, in *White* v. *Howard*, 38 Conn., 366. " Charities are highly favored in law, and they have always received a more liberal construction than the law allows to gifts to individuals." 1 Story Eq. Jur., § 1165. " Courts look with favor upon charitable gifts, and take especial care to enforce them, and guard them from assault, and protect them from abuse." Perry on Trusts, 630. " Gifts to charitable uses are highly favored in law, and will be most liberally construed in order to accomplish the intent of the donor; and trusts which cannot be supported in ordinary cases, will be established and carried into effect where it is to support a charitable use." *Sanderson* v. *White*, 18 Pick., 333. " If it is once determined that the donor intends to create a public charity, very different rules from those which are applied in establishing private trusts will be applied, in order to effect the intent of the testator and establish the charity." Perry on Trusts, 629.

The beneficiaries in public charities must necessarily be described in general terms. They are persons in most cases yet unborn, and particularization is out of question. Classes

may be described, running down through all time, but in-
dividuals can only be designated as belonging to such
classes.   Testators, therefore, in their description of parties
to be benefited by their public charities, must necessarily be
confined to such terms as "the aged," "the indigent,"
"the sick," "the lame," "the infirm," "the destitute,"
of a certain class or of a certain territory.   These terms
have a customary and popular meaning, and the parties
to whom they apply are reasonably unmistakable, although
the terms are indefinite to a certain extent.  Our statute
of charitable uses could find no better terms to define its
meaning than the general phrases, "ministry of the gospel,
and relief of the poor."   Judge FOSTER, in *White* v.
*Howard*, (*supra*), says:   "After all, there is no more
uncertainty here than there is in the statute of 1702.
If this devise is void for uncertainty then this provision
in the statute must be void for the same reason.   We
should hesitate to pronounce a decision declaring one of the
clauses of this ancient statute void for uncertainty."   Perry
(on Trusts, p. 651,) says: "In order that there may be a
good trust for a charitable use there must always be some
public benefit open to an indefinite and vague number.
That is, the persons to be benefited must be vague, uncer-
tain and indefinite, until they are selected or appointed to
be the particular beneficiaries for the time being."   Judge
Story in his work on Equity Jurisprudence, § 372, says:
"Courts of equity now, in most of the states, take jurisdic-
tion in carrying into effect charitable bequests, however
general are the purposes and objects intended, if they are
sufficiently certain to be intelligible."   Indeed, the famous
statute of 43 Elizabeth, in enumerating "the pious and
godly uses" to which it applies, employs no more definite
descriptions than the following— "relief of the aged," "the
maintainence of sick and disabled soldiers and marines," "the
education and preferment of orphans," "the marriage of
poor maids," "the supportation of tradesmen and handi-
craftsmen," that of "persons decayed," "the redemption of
prisoners and captives."

It would be strange indeed, if the law should require a testator to be more particular in the description of the objects of his bounty in charitable bequests for the relief of such unfortunates, than are the terms of the statute itself which authorizes such bequests to be made.

The uncertainty that must exist in such cases is reduced to certainty if a definite class of beneficiaries is described and a mode is provided for the selection of the particular objects of the bounty. *Id certum est quod certum reddi potest.* Judge STORRS, in *Brewster* v. *McCall's Devisees*, 15 Conn., 292, says:—"A devise is never to be construed as absolutely void but from necessity; if it be possible to reduce it to a certainty the devise is to be sustained." Judge DAGGETT said in *Bull* v. *Bull*, 8 Conn., 50:—"If a rule is given by which the persons can be described, if not with entire certainty, yet sufficiently so to uphold the devise, and if it can by possibility be upheld, it can never be pronounced void." The court in *Holmes* v. *Mead*, 52 N. York, 322, said:—"It is not material that the legatees should be definitely ascertained and known at the date of the will, or even at the death of the testator. It is sufficient if they are so described that they can be ascertained and known when the right to receive the legacy accrues."

In the case at bar the beneficiaries of the testator's bounty are described as definitely as could be expected in a bequest which was intended to be perpetual. Provision was made for the selection of the parties to be benefited from the class designated, by a corporation with sufficient by-laws and regulations for the purpose. This is equivalent to the appointment of trustees in perpetual succession to make the selection. Such being the case, we think that the best considered cases in this state and elsewhere sustain us in holding that this gift to public charity is valid, so far as the question we are now considering is concerned.

We will briefly consider a few of our own decisions on the subject. In the case of *Bull* v. *Bull*, *(supra,)* a remainder was bequeathed to executors, in trust for the most needy of the testator's brothers and sisters, with express authority

and power to the executors to make distribution to the most needy. The court say:—"Here it can be ascertained who are *the most needy* of the brothers and sisters and their children. A rule is given by which the persons can be designated, if not with entire certainty, yet sufficiently so to uphold the devise." This was a private charity, where, it seems, the rule of certainty in the description of beneficiaries is more stringent than is required in public charities; still the description would seem to be as indefinite as in the case at bar. The case was saved by the power, given to the executors to make a selection, which the law alone could never have done. It required judgment and discretion to ascertain the "most needy."

In the case of *Treat's Appeal from Probate*, 30 Conn., 113, a devise was made to trustees for the promotion of education and science among the Indian and African youth of the United States and elsewhere, with full power in the trustees to make selections of beneficiaries from the class designated. The court say:—"As to the objects of the charity, what can be more unambiguous and certain? The class is certain, and the individuals to be selected from the class may be made certain by the selection of the trustees." Here again the devise was saved by the power given to the trustees to make selections from the class designated. It might have been asked as cogently in that case as similar questions are asked in this, what age is comprehended by the word "youth?" what number of years and days does it include, so that if any addition be made, the party will pass beyond youth, and be of an age beyond the limits of the devise? So, again, up to what mixture of Indian or African blood with the blood of other races of men, will a person still retain the Indian or African character or cease to belong to those races? There would seem to be as much uncertainty here as in the words "aged," "indigent," "respectable," Youth—aged! The one is in the early part of life, the other in the latter; where one ceases, or the other begins, is, manifestly, equally indefinite. In the case of *White* v. *Fisk*, 22 Conn., 31, a bequest was made to trustees

for the support of indigent pious young men preparing for the ministry in New Haven. The court held the bequest void on the ground that no power was conferred upon the trustees to make selections from the class described, and that the description of the beneficiaries was too indefinite without such power. The court say :—" The difficulty of carrying this provision into effect is as great as if no trustee had been appointed ; for no rule of determination, selection or appointment is furnished by the will, and no positive or discretionary power of determination bestowed. It has been suggested that the power of selecting the beneficiaries under this bequest, and of apportioning the sums of money annually to be disbursed among them, is in the trustees. We do not so understand it. Their only power is to expend the money—to pay it out to the persons entitled under the will to receive it. * * There is a class of cases, the authority of which we recognize, where the individual beneficiaries under a will, but included in a definite class, are left uncertain, and yet the bequest for their benefit has been sustained. But these are cases where the gift has been to some corporate or voluntary association, whose business and duty it becomes to dispense the charity ; or where power is very certainly conferred by the will upon the executor or trustee, to discriminate and select, or to apportion the application of the funds." Judge ELLSWORTH, in *Treat's Appeal from Probate*, (*supra*,) in commenting upon this case says:— " The testator had provided in his will no way of selecting the beneficiaries from a class, and the court held that they could not, even as a court of equity, do it for him. Had that power been given to his executors or trustees, the clause in the will would have been sustained, and Judge Hitchcock would not have been disappointed in his benevolent purpose." The case of *White* v. *Fisk* has been strenuously urged to show the bequest in question void, but instead of showing this, the case sustains the legality of the bequest. The uncertain words in that case were, "indigent," "pious," "young." In the case at bar, "indigent," "aged," "respectable." The word "indigent" appears in

both cases.    Can any one say that the words, "aged," "respectable," are more uncertain than the words, "pious," "young?"    Still it appears by *Treat's Appeal from Probate* that *White* v. *Fisk* would have been sustained if power of selection had been given to the trustees.

There are many cases elsewhere which maintain the same doctrine.    *Washburn* v. *Sewall*, 9 Met., 280; *Odell* v. *Odell*, 10 Allen, 1; *Saltonstall* v. *Sanders*, 11 Allen, 446; *Jackson* v. *Phillips*, 14 Allen, 465; *Fellows* v. *Miner*, 119 Mass., 541.

Cases might be cited from other states to the same effect, but we think it unnecessary.    We think the bequest is valid so far as this question is concerned.

Some question has been made with regard to the meaning of the phrase " have been residents of the city of New London."    It is said that a will speaks from the death of the testator, and that the meaning of the phrase therefore is, have at that time been residents, &c.    It is true that wills generally speak from the death of the testator, but there are many exceptions to the rule.    The language of a will is to be construed according to the manifest intent of the testator as shown by the will.    This bequest was intended to be perpetual.    The corporation to hold the property during all coming time is burdened with the duty of making selections of beneficiaries from time to time, perpetually, and when selections shall be made, the parties selected shall *then* " have been residents of the city of New London."    This is the obvious meaning of the phrase.

Some question has also been made in respect to the meaning of the word "home," as used in the will.    But we think it is equally clear what was the precise meaning the testator attached to the word.    He was describing a house for the permanent residence of the aged, indigent, respectable women of the city of New London.    Webster defines " home " to be " a dwelling house ; the house where one resides ; residence."    Surely, there is no uncertainty in the will regarding the meaning of the word.

Is the bequest void by our statute against perpetuities?    The property is bequeathed to the executors of the will in

trust for the public charity therein created, " until an act of incorporation can be obtained from the General Assembly of the state of Connecticut."

It is said that, should an act of incorporation never be obtained, the property would remain in the hands of the executors perpetually, and that consequently the bequest is obnoxious to the statute.

It is manifest from the will that the testator intended that the property should remain in the hands of his executors but a short period of time. The language of the will is, " until an act of incorporation can be obtained." Clearly this act was to be procured as soon as it could be done. It is clear, therefore, that a reasonable time only for the act to be obtained was contemplated by the testator. But it is said that the state might refuse to grant the act. It is true that it may be within the limits of possibility that the sovereign power might refuse. And so might the donee of a gift refuse to receive a benefaction tendered. The state was to a great extent to be benefited by this public charity, for many of its citizens, who in part make up the body-politic, were to be benefited through all coming time. It was scarcely possible, therefore, that the state would refuse such a benefaction tendered to its citizens, tendered in part to itself.

It is further said, that no one is charged with the duty of bringing the matter to the attention of the legislature and procuring the act of incorporation. We do not so understand the will. The executors were burdened with this duty. They were appointed to execute the will, and they accepted the trust. A part of its execution was to carry into effect this bequest, and they would have been recreant to their duty had they neglected or refused to execute this important part of their trust. Executors must pay legacies, and this was in the nature of a legacy to the " aged, indigent, respectable women of New London." Their duty could not have been fulfilled until they had procured an act of incorporation, and transferred the property to the corporation when organized. Hence, the gift of the property to the executors was for them merely to hold for such a reasonable time as might be suffi-

cient for them to procure an act of incorporation from the legislature, and then transfer the property to the corporation as soon as it should become organized. Surely the will itself was not obnoxious to the statute. What would have become of the property if an act of incorporation had not been procured within such reasonable time, it is not necessary to consider.

There is another view of this question. The testator in this bequest declares his object and purpose to be the founding of a home for the aged, &c., which should endure forever. He realized that men must die, but corporations never die. He desired, therefore, to have the charity under the management and administration of a corporation that should endure as long as the home should exist. To carry out this object he gives the property to his executors, to be transferred to the corporation as soon as it should be chartered and organized. The instrumentality of the executors was employed merely to pass the title to the corporation. Nothing is said in the will as to the beneficial interest in the property becoming vested in the beneficiaries when the property should be conveyed to the corporation. It became vested in them on the death of the testator, liable to be devested if a corporation should not be organized within a reasonable time under all the circumstances. There is no room for claiming that the property did not vest till the conveyance should be made to the corporation. The charity could not be administered till then, but its administration had nothing to do with the vesting of the property, any more than the possession of property by a devisee has to do with the vesting of the same in him. Reversionary interests vest in a party when the possession of the property is in another. So here, the property became vested on the death of the testator, but the time when the beneficiaries should enjoy the charity was deferred till the corporation should become organized and the property conveyed.

There is nothing in either of these views of the question which conflicts with the case of *Jocelyn* v. *Nott*, 44 Conn., 55, which has been so strenuously claimed. In that case

real estate was devised to trustees till some Congregational church, orthodox according to the faith, order and discipline of the Congregational churches of Connecticut and connected with the General Association of the state, should become organized and should build a church edifice upon the land, for the worship of God according to the usages of such church, and till the trustees should become satisfied that the cost of the building had been paid, and the church and society were free from debt, and permanently established on the land; then the trustees were required to convey the property to the society. The court held the devise void by the statute against perpetuities.

It will be observed that there was no connection whatever between the trustees and any one of the Congregational churches of the state of the order described. They were to hold the property till some one of such churches should comply with the numerous conditions, which the court well said might never occur. The devise was a mere offer of the land, and the trustees were to wait and see whether any one of the churches described would accept the proposition. Clearly, that case is not analogous to the one at bar.

The case of *Ould* v. *Washington Hospital for Foundlings*, 95 U. S. Reps., 303, is strikingly like the one under consideration. The devise was there made to trustees to hold the property till an act of incorporation should be passed by Congress, establishing a hospital for foundlings, and then convey the property to the corporation. Justice SWAYNE, in giving the opinion of the court, says: "The testator chose to reach the end in view by the intervention of trustees, and instructing them to convey at the proper time. This provision in the will was, therefore, a conditioned limitation of the estate vested in the trustees, and nothing more. Their conveyance was made necessary to pass the title. The duty with which they were charged was an executory trust. * * When such uses are consummated, and no longer *in fieri*, the law of perpetuity has no application." See also *Inglis* v. *Sailors' Snug Harbor*, 3 Pet., 310.

We think the bequest is not obnoxious to the statute against perpétuites.

We think the bequests to the ecclesiastical societies are void by the statute, on the ground that they create perpetuities. A sum of money was bequeathed to each of the societies described, to be invested as a perpetual fund; and the annual income thereof, or so much as should be necessary, applied in keeping in good order certain burial lots, and the remainder of the income, if any, applied to the maintenance of the religious services of the societies. The will then goes on to say that in case the societies should at any time fail to comply with these conditions, in keeping in good order the burial lots, the bequests should become void.

It has been held in numerous decisions, that bequests for the purpose of keeping burial lots or cemeteries in good order or repair, are not given in charity, and, therefore, are not protected by the statute of charitable uses.

If the sums of money had been bequeathed to the societies without condition, and the income thereof applied to the maintenance of the religious services of the societies generally, and one of their duties had been the keeping in good order burial lots or cemeteries, then the bequest would have been given to a charity, and would have been protected by the statute of charitable uses.

But the bequests as they are, although some portion of the income is to be devoted to a charitable purpose, cannot be supported. If it were otherwise it would be in the power of an individual to make a perpetuity of property to any extent, by devoting some small portion of the undivided income thereof to some charitable purpose. A little charity, in such a case, cannot preserve the entire bequest.

Neither can the forfeiture clause protect the bequests. There might not be a forfeiture within a thousand years, and during all that time the property, devoted to keeping in order the burial lots, would be a perpetuity, contrary to the statute.

We think the bequest to the Smith Memorial Home is

valid; but that the bequests to the ecclesiastical societies are invalid; and so we advise the Superior Court.

In this opinion PARDEE and LOOMIS, Js., concurred.

CARPENTER, J. I think the legacies to the religious societies were good; and that the duty of keeping in order the lots in the cemetery does not make them void as contrary to the statute against perpetuities or otherwise.

GRANGER, J., concurred in holding that the legacies to the religious societies were void, but dissented as to other points in the opinion.